UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS


| | | |
|---|---|---|
| ELISE G. K. MORRISON, | ) | CASE NO. |
| 5551 Azalea Court | ) | |
| Rolling Meadows, IL 60008, | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL COLLEGIATE ATHLETIC | ) | |
| ASSOCIATION | ) | |
| c/o NCAA Board of Governors | ) | |
| 700 West Washington Street | ) | |
| Indianapolis, IN 46206, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BETHANY DANNELLY | ) | |
| Associate Athletic Director | ) | |
| Washington and Lee University | ) | |
| 204 W. Washington Street | ) | |
| Lexington, VA 24450, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PRESTON DAY | ) | **COMPLAINT FOR MONEY DAMAGES** |
| Former Police Officer for Capital University | ) | |
| c/o West Jefferson Police Department | ) | (Jury Demand Endorsed Hereon) |
| 28 East Main Street | ) | |
| West Jefferson, Ohio 43162, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DUAA ZAGHMOT | ) | |
| Police Officer for Capital University | ) | |
| c/o Capital University Dept. of Public Safety | ) | |
| 661 College Avenue | ) | |
| Bexley, Ohio 43209, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CAPITAL UNIVERSITY | ) | |
| c/o Department of Public Safety | ) | |
| 661 College Avenue | ) | |
| Bexley, Ohio 43209, | ) | |

and         )
           )
MARCUS HALL      )
Former Police Officer for Capital University )
c/o Veterans Administration Hospital  )
420 North James Road     )
Columbus, Ohio 43219,     )
           )
  and        )
           )
JEREMY GRIMES      )
Police Officer for the City of Bexley, Ohio )
559 North Cassingham Road   )
Bexley, Ohio 43209,      )
           )
  and        )
           )
CITY OF BEXLEY, OHIO    )
c/o Bexley Police Department   )
559 North Cassingham Road   )
Bexley, Ohio 43209,      )
           )
  and        )
           )
JOHN DOES I-V, NCAA officials whose )
identities and addresses are presently unknown, )
           )
      Defendants.  )

Plaintiff, Elise G. K. Morrison ("Elise"), for her Complaint against Defendants, the National Collegiate Athletic Association ("NCAA"), Bethany Dannelly ("Dannelly"), Preston Day ("Officer Day"), Duaa Zaghmot ("Officer Zaghmot"), Capital University ("Capital"), Marcus Hall ("Officer Hall"), Jeremy Grimes ("Officer Grimes"), the City of Bexley, Ohio ("Bexley"), and John Does I-V ("Does I-V"), and each of them, jointly and severally, and hereby claims, alleges and states as follows:

## NATURE OF THE ACTION

1.  This is a civil rights action brought under the provisions of 42 U.S.C. 1983 and other state law claims arising out of the deprivation of Plaintiff's liberty and violations of her liberty, associational, privacy and reputational interests by Capital University Police Officers and by an

Officer of the Bexley Police Department, acting at the behest and instructions of the NCAA tournament official, and therefore acting in joint concert and participation between the NCAA and the Capital and Bexley police, all of which occurred at the Capital Center Performance Arena on the grounds of Capital University in Bexley, Ohio, on March 16, 2024.

## JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over claims brought under the Civil Rights Act of 1871, 42 U.S.C. § 1983, pursuant to the provisions of 28 U.S.C. §§ 1331, 1343(3) and 1343(4). Jurisdiction over the state law claims is conferred by 28 U.S.C. § 1367.

3.      Venue is proper in the Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Bexley, Franklin County, Ohio, within this judicial district and division.

## PARTIES

4.      Plaintiff Elise is a citizen of the State of Illinois who was present in Bexley, Franklin County, Ohio, during the March 14-16, 2024, time period.

5.      Defendant NCAA is an organization comprising 102 athletic conferences and 1,098 public and private colleges and universities throughout the United States.  It was founded in 1906 to regulate the rules of college sports and has grown into the governing body for nearly half a million college athletes playing on 19,886 teams that vie to compete each year in 90 championships in 24 sports across 3 divisions – Division I ("D-I"), Division II ("D-II"), and Division III ("D-III").  The annual D-III Women's Basketball Tournament, culminating in the national championship games among the "Final Four" teams, is one such NCAA-sponsored championship.  The D-III Women's Final Four tournament is a much-anticipated event open to the public in the form of live spectators attending the games at the tournament site plus a regional and national television audience.  On

information and belief, the NCAA appoints various officials to supervise and manage the tournament activities, including without limitation a tournament director.

6.     At all relevant times, the NCAA acted in joint concert and participation with and through (i) its tournament director, Dannelly, and/or (ii) Capital University and/or its police department, and/or (iii) the City of Bexley, Ohio and/or its police department, and/or (iv) the four individual police officers sued in this action, and/or (v) John Does I-V, and acted within the course and scope of such activities or services.  The NCAA is therefore a "state actor" and a "person" under 42 U.S.C. 1983 that acted at all relevant times under color of law.  The NCAA is sued herein in its individual capacity.

7.     Defendant Dannelly is a citizen of the State of Virginia who is the Associate Athletic Director of Washington and Lee University and who sits on the same NCAA D-III women's basketball committee as Kristin Hughes, the Athletic Director of Smith College ("A.D. Hughes").  Dannelly was the NCAA tournament director for the 2024 Women's Final Four Basketball Tournament in Bexley, Ohio.  Smith College was one of the four teams playing for the national championship during that tournament.

8.     Defendant Day was at all relevant times employed as a police officer by the Capital University Police Department in Bexley, Ohio.  Day is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of law.  He is sued in his individual capacity and in his official capacity.  At all relevant times, he was acting within the course and scope of his employment and pursuant to the official customs, practices, policies and procedures of Capital University and its police department.

9.     Defendant Zaghmot is and was at all relevant times employed as a police officer by the Capital University Police Department in Bexley, Ohio.  Zaghmot is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of law.  She is sued in her individual capacity and in her

official capacity. At all relevant times, she was acting within the course and scope of her employment and pursuant to the official customs, practices, policies and procedures of Capital University and its police department.

10. Defendant Hall was at all relevant times employed as a police officer by the Capital University Police Department in Bexley, Ohio. Hall is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of law. He is sued in his individual capacity and in his official capacity. At all relevant times, he was acting within the course and scope of his employment and pursuant to the official customs, practices, policies and procedures of Capital University and its police department.

11. Defendant Capital is a private university which at all relevant times as part of its educational services operated and managed the sports facility and basketball arena on its campus known as the Capital Center Performance Arena located at 2360 East Mound Stret, Bexley, Ohio 43209.

12. At all relevant times, Capital acted in joint concert and participation with, and as an agent, servant, contractor and/or representative of, (i) the NCAA, and/or (ii) the NCAA tournament director, Dannelly, and/or (iii) its police department, and/or (iv) the City of Bexley Police Department, and/or (v) the four individual police officers sued in this action, and/or (vi) John Does I-V, and acted within the course and scope of such activities or services. Capital is therefore a "state actor" and a "person" under 42 U.S.C. 1983 that acted at all relevant times under color of law. Capital is sued herein in its individual capacity.

13. Defendant Grimes is and was at all relevant times employed as a police officer by the City of Bexley, Ohio, police department. Grimes is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of law. He is sued in his individual capacity and in his official capacity. At all relevant times, he was acting within the course and scope of his employment and pursuant to the

official customs, practices, policies and procedures of the City of Bexley, Ohio, and its police department.

14.     Defendant Bexley is a unit of local government organized under the laws of the State of Ohio.  Bexley is a "person" under 42 U.S.C. 1983 and at all relevant times acted under color of law and pursuant to its official customs, practices, policies and procedures.

15.     Defendants Does I-V are persons whose identities and locations are presently unknown to Plaintiff who, on information and belief, at all relevant times served as officials, employees, agents, servants and/or representatives of the NCAA who were acting within the course and scope of their respective employment, duties, work or services with the NCAA, in joint concert and participation with Capital University, during the 2024 NCAA D-III Women's Final Four Basketball Tournament at Capital.  Does I-V are "persons" under 42 U.S.C. 1983 and at all relevant times acted under color of law.  He, she or they are sued in his, her or their individual capacities and official capacities.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.     Elise attended the NCAA Women's Division III Basketball national semi-final games for the 2023-24 season on March 14, 2024, between Smith College and Wartburg in the first game and between NYU and Transylvania in the second game. She was also a spectator at the Women's D-III Basketball National Championship game for the 2023-24 season between NYU and Smith College on March 16, 2024.  All three of these Final Four games were held at the Capital Center Performance Arena, 2360 East Mound Stret, Bexley, Ohio 43209, on the campus of Capital University.

17.     Elise is the older sister of an NYU player, Morgan Morrison ("Morgan"), who played the previous 2022-23 season for Smith College.  In fact, Morgan was the D-III National Player of the Year for the 2022-23 season during which she played for Smith.  Smith College played Transylvania in the 2022-23 Final Four semi-final game in which Morgan fouled out (and Smith lost by a 76-65 score), so for her the 2024 semi-final game was a rematch of that disappointing 2023 national semi-

final game against Transylvania.

18.     Morgan graduated from Smith College in 2023 with a Bachelor of Science degree in electrical engineering and decided to pursue her Master's Degree in electrical engineering at NYU's Tandon School of Engineering starting last Fall.  Smith College has no graduate program in electrical engineering for Morgan to attend.  On information and belief, the Smith College basketball coaching staff was extremely upset with Morgan's decision to leave Smith College and play basketball for NYU. The Smith College coaching staff sent her several text messages and even attempted to speak with her in New York City in Spring 2023 to try to convince her to remain at Smith.

19.     For Elise, the 2024 Final Four tournament was a chance to make amends for her questionable behavior at the 2023 Final Four tournament.  In the 2023 tournament semi-final game between Smith and Transylvania, she had been ejected from the game for acting belligerently and cursing the officials – and she realized later that she deserved the ejection.  That is why she was thankful for a second chance in 2024 and resolved to be on her best behavior at the 2024 tournament.

20.     At the 2024 tournament, after the two semi-final games on March 14, 2024 ended without incident in Smith and NYU victories, Elise's and Morgan's father, Gary Morrison ("Gary"), escorted his daughter Morgan to the NYU bus.  Along the way they encountered Lynn Hersey, Smith College head basketball coach ("Coach Hersey"), and Kristin Hughes, Smith College Athletic Director ("A.D. Hughes"). Coach Hersey refused to shake hands with Gary, walked by him, and would not acknowledge Morgan either. A.D. Hughes did shake Gary's hand although she likewise refused to acknowledge or speak to Morgan.

21.     On March 16, 2024, before the National Championship game started, Elise took a seat with her parents in the NYU section facing the NYU bench when she noticed her older sister, Suzanne Morrison ("Suzanne"), sitting on the other side of the court behind the NYU bench.  Wanting to sit with her sister and given the fact that there was no assigned seating, Elise walked down from the stands

and made her way around the court when she accidentally bumped into one of the referees. This was still during the pre-game. Elise apologized to the referee and a short, polite conversation ensued between them having nothing whatever to do with the game.

22. During the few seconds the conversation lasted, Dannelly, the supervising NCAA tournament official, aggressively approached Elise, scolded her, and told her she could not speak with the referees. Elise apologized to Dannelly, said "good luck" to the referee, and started to walk away. Dannelly scolded her again and told her to "move on," and Elise continued on her way to the opposite side of the arena. There, Elise sat with her sister, two cousins, and her uncle, approximately 15 rows up from the floor, during the entire first half of the game without further incident.

23. At half-time, Elise and Suzanne walked down from their seats to use the restroom and then both of them moved to the opposite side of the arena, facing the NYU bench, to sit with their parents for the second half. Elise and Suzanne took empty seats at the top of the bleachers on that side.

24. After the 3rd Quarter began, and as she and Suzanne were talking about the game between themselves, Elise saw four police officers in full uniform and gear (guns, radios, bullet-proof vests, etc.) climbing up the bleachers toward them. Elise learned later that they were three Capital police officers, Officer Day, Officer Zaghmot, and Officer Hall, and one Bexley police officer, Officer Grimes. When the four police officers got to where Elise and Suzanne were sitting, in a row behind their parents, Officer Day informed Elise that she was being ejected from the game. When Elise asked why, the officers stated they were not given a reason, just that she would have to leave.

25. Elise and her family members present were extremely upset, especially her parents, because Elise had not said or done anything wrong and certainly nothing to justify ejection from the game.

26. As Elise was escorted out of the arena, surrounded by the four police officers, the Smith

College fans began to cheer, jeer, and shout disparaging remarks at her.  One Smith College fan or parent shouted at her: "Get the fuck out of here, bitch."  Elise responded by flipping him off and yelling at him "enjoy your loss."  That occasion, in reaction to being cursed by Smith College fans while being unreasonably ejected by the police officers although she had done nothing wrong, was the first and only time on March 16, 2024 that Elise responded with an obscene gesture.

27.     Elise spent almost the entire second half of the game watching Morgan win the National Championship on her iPhone with her parents from the parking lot.  After the game and the trophy ceremony, and after the Smith team and fans had already left, Elise calmly walked back into the arena hoping to celebrate the victory with her sister and the rest of their family.

28.     She walked past two of the police officers who did and said nothing and did not try to stop her; after all, the game was long over.  However, Dannelly saw her and demanded that the police escort her out again.  At that point, prompted by Dannelly's demands, Officer Day told Elise that she would be arrested for trespass if she remained in the arena and even on the premises at all.  Officer Day and one other officer told Elise that she needed to leave, get into her car, and drive away.  The two police officers went into the parking lot with her, watched as she got into Gary's car, took down Gary's license plate number, and stayed there until Gary drove Elise out of the parking lot and off the premises.

29.     Elise and Gary drove to the post-game celebration that NYU had organized at a local sports bar.  At the bar, two NYU athletic department officials informed Elise that she had been "set up" – that her picture had been given to Dannelly in advance of the game.  The NYU administrators did not tell Elise who gave her photo to Dannelly in advance, but on information and belief, it is reasonably probable that Elise's photo was given to Dannelly by A.D. Hughes, Coach Hersey, or someone else associated with Smith College.

30.     After that night, and continuing to be very upset by the incident, Elise wrote and sent

three e-mails.  One was to Dannelly asking for a reason why she was ejected from the game.  It went unanswered.

31.   Elise sent the second e-mail to A.D. Hughes expressing disappointment that the Smith College head coach had refused to shake her father's or her sister's hand after the semi-final game on March 14, and in the way the Smith College fans had jeered her expulsion from the National Championship game.  That e-mail, too, went unanswered.

32.   Elise sent the third e-mail to Amy Altwarg, the Smith College Alumni Director, explaining her disappointment with and disapproval of the Athletic Department's actions and the disparaging remarks and poor sportsmanship she heard and experienced.  She explained that this was devastating to Morgan and the Morrison family and to their love of and pride in Smith.

33.   Ms. Altwarg responded politely, saying she would convey Elise's message to her "colleagues in leadership" and wishing Morgan "all the best in her continued studies and athletics at NYU."  That was the last and only thing Morgan, Elise, or anyone else in the Morrison family ever heard from any official or employee of Smith College.

34.   Elise subsequently received a copy of the Capital University Incident Report regarding Incident No. CR-24-000022 that Officer Day prepared and submitted to the Capital Police Department on March 17, 2024.  Officer Day's Report consisted, in relevant part, of the following 9 sentences:

> [1] On 3/16/2023 at approximately 8:50 p.m., NCAA officials approached Officer Day [Badge] #38 regarding a suspect in the [arena] who was acting belligerent [*sic*] towards the competing team. [2] NCAA officials stated the suspect was kicked out of a basketball game at a different University the previous year for acting belligerent [*sic*] and they noticed the suspect showed up to today's game intoxicated and acting belligerent again.  [3] The suspect was heard shouting insults and noticed making inappropriate gestures toward the other team.  [4] At one point the suspect exited out a back door no one was allowed to walk through despite multiple NCAA officials telling her she was not allowed to walk through the door.  [5] When she came back into the building and was confronted by NCAA officials, she ignored them at first, later tried to cut across the same way again before being stopped by Officer Day, and then proceeded to give multiple inappropriate gestures to NCAA

officials as she made her way across the [arena] the right way.

> [6] At this time the NCAA officials made the determination to remove her from the [arena].  [7] Officer Day #38, Zaghmot #39, and Bexley PD confronted the suspect and told her she needed to leave.  [8] While being escorted out the suspect continued to make inappropriate gestures toward all the other guests in the [arena] and started shouting "F*ck you!" to the other team multiple times causing a scene.  [9] The suspect was walked out the front doors and proceeded to walk away from the building.

35.    Elise categorically denies she was acting belligerently towards the Smith team at that time or any time on March 16, 2024, as claimed in the first sentence of the Incident Report.  With respect to the second sentence of the Report, Elise acknowledges that any such statement by the unidentified "NCAA officials" regarding her previous year's behavior would be correct and accurate, but she unconditionally denies that she was intoxicated at any point during the championship game or that she was acting belligerently "again" in any way.  On the contrary, she was deliberately and consciously exhibiting her best behavior specifically because of the prior year's incident.

36.    Regarding the third sentence of the Report, Elise specifically denies that she shouted insults or made inappropriate gestures toward the Smith team at any time, and therefore states that the accusations made by NCAA officials to Officer Day were false.

37.    As to the fourth sentence, the only door Elise went through after first coming into the arena was the women's bathroom door at halftime.  There were no multiple NCAA officials telling her that she was not allowed to walk through any door at any time.  Therefore, the accusations that NCAA officials made to Officer Day in this respect were fabricated and false.

38.    Elise states that the fifth sentence of the Report is pure fantasy; none of it ever happened.  Elise never "came back" into the building because she never left it.  She was not confronted by NCAA officials and therefore never ignored them.  Elise did not "give multiple inappropriate gestures to NCAA officials" at any time prior to being ejected from the arena.

39.    In the next paragraph of the Report, the eighth sentence is completely inaccurate.

11

Paragraph 26 above contains the accurate account of what happened as the four police officers escorted Elise from her seat in the stands and out of the arena.

40.     On March 16, 2024, Day, Zaghmot and Hall acted pursuant to the official custom, practice, policy and procedures of Capital and its police department, and Grimes acted pursuant to the official custom, practice, policy and procedures of Bexley and its police department, in following the directions and instructions of Dannelly, and perhaps other NCAA officials, to eject Elise from the arena for alleged disorderly and disruptive conduct without first conducting a reasonable check, investigation, verification or corroboration of the factual predicates for such directions and instructions before depriving Elise of her rights protected by the Constitution and laws of the United States and by the Constitution and laws of the State of Ohio, including without limitation the deprivation of Elise's liberty without due process of law, the abridgement of her freedom of association, the invasion of her protected privacy and reputational interests, and the failure to try to employ less intrusive and extreme measures than removing her from the assembly.

41.     The official customs, practices, policies and procedures of Capital and Bexley, and their respective police departments, to follow the directions and instructions of Dannelly and perhaps other NCAA officials in taking actions against spectators like Elise at the sporting event, without first conducting a reasonable check, investigation, verification or corroboration of the factual predicates for such directions and instructions before depriving spectators like Elise of their rights protected by the Constitution and laws of the United States and by the Constitution and laws of the State of Ohio, were the moving force behind the constitutional deprivations suffered by Elise at the Capital Center Performance Arena on March 16, 2024, including without limitation the deprivation of her liberty without due process of law, the abridgement of her freedom of association, the invasion of her protected privacy and reputational interests, and the failure to try to employ less intrusive and extreme measures than removing spectators like her from the assembly.

42.    At all times relevant to this case, Capital and Bexley had, or should have had, knowledge of the common practices of police officers like Day, Zaghmot, Hall and Grimes of failing properly, adequately and reasonably evaluate, check on, investigate, verify and corroborate the factual allegations described by any purported eyewitness concerning actions that might constitute misdemeanors and which were allegedly committed outside the presence of the officers, but failed to adequately train and supervise such officers in the proper evaluation, checks, investigations and verifications of the conduct alleged by such persons.  That failure to train and supervise police staff was a direct and proximate cause of the constitutional deprivations that Elise suffered.

43.    Capital and Bexley ratified the unconstitutional conduct of Day, Zaghmot, Hall and Grimes by failing to adequately train and supervise them.  In ratifying their conduct, Capital and Bexley acted consistently with their official policies, practices and customs.

44.    As a further direct and proximate result of the actions of Defendants, and each of them, jointly and severally, including without limitation actions by some or all of Defendants intended to cause and achieve this result, Elise suffered mental anguish, emotional distress, embarrassment and humiliation in addition to the deprivation, abridgement and unreasonable restrictions on her rights under the Constitutions and laws of the United States and the State of Ohio.

### FIRST CLAIM FOR RELIEF
(Claim for Deprivation of Federal Constitutional Rights
Pursuant to 42 U.S.C. § 1983 Against All Defendants)

45.    Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Forty-four (44), inclusive, above as if the same were fully rewritten herein.

46.    Defendants and each of them have, under color of state law, deprived Elise of rights, privileges and immunities secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States including, without limitation, (i) the right to be free from deprivations of liberty without due process, (ii) the right to be protected from unreasonable intrusions

on liberty without adequate verification of the facts or reasonable suspicion of unlawful conduct, (iii) the right to peaceably assemble and freely associate with others, (iv) the right to privacy and to be free from invasions of privacy creating publicity that unreasonably places a person in a false light which would be highly offensive to a reasonable person, and (v) the right to be protected from harm to one's reputational interests by the unprivileged publication of false statements.

47.     Dannelly, the NCAA, and Does I-V, and each of them, knowingly made false statements to Officer Day, Officer Zaghmot, Officer Hall and/or Officer Grimes with the purpose of incriminating Elise and causing her to be wrongfully and unjustifiably ejected from the basketball game, arena and entire premises on March 16, 2024, constituting the offense of Falsification in violation of the provisions of R.C. 2921.13(A)(2), a misdemeanor of the first degree pursuant to R.C. 2921.13(F)(1).

48.     Dannelly, the NCAA, and Does I-V, and each of them, knowingly made such false statements to Officer Day, Officer Zaghmot, Officer Hall and/or Officer Grimes with the purpose to mislead them in the performance of their official functions, constituting the offense of Falsification in violation of the provisions of R.C. 2921.13(A)(3), a misdemeanor of the first degree pursuant to R.C. 2921.13(F)(1).

49.     Notwithstanding the foregoing false statements and falsifications by Dannelly, the NCAA, and Does I-V, and each of them, the common approach taken by Officer Day, Officer Zaghmot, Officer Hall and/or Officer Grimes toward Elise was "eject first and ask questions later." These officers did not act reasonably by failing to investigate, verify and/or corroborate the information allegedly provided to them by Dannelly, the NCAA, and Does I-V.  In fact, they never even informed Elise of the reason she was being forcibly ejected from the game, the arena and the premises, nor did they provide her and her surrounding family members with an opportunity to explain, rebut or deny whatever accusations were being made against her.

50.     Capital failed to properly and adequately train and supervise Officers Day, Zaghmot and Hall in adequately and reasonably investigating, evaluating, verifying, substantiating and corroborating the information allegedly provided to them by Dannelly, the NCAA, and/or Does I-V.

51.     Bexley failed to properly and adequately train and supervise Officer Grimes in adequately and reasonably investigating, evaluating, verifying, substantiating and corroborating the information allegedly provided to him by Dannelly, the NCAA, and/or Does I-V.

52.     The rules, regulations, customs, policies, practices and procedures of Capital and Bexley, and each of them, regarding the investigation, evaluation, verification, substantiation and corroboration of information about alleged misdemeanor activities conducted outside the presence of their respective officers were inadequate and unreasonable, and constituted, caused or were the moving forces behind the constitutional deprivations suffered by Elise.

53.     Capital and Bexley, and each of them, were on prior notice of the need properly to train and supervise their respective police officers regarding the policies and procedures relating to the proper investigation, evaluation, verification, substantiation and corroboration of information about alleged misdemeanor activities conducted outside their presence, but Capital and Bexley, and each of them, failed to adequately train or supervise their respective police officers and, in so failing, constituted, caused or were the moving forces behind the constitutional deprivations suffered by Elise.

54.     Defendants, and each of them, acted knowingly, intentionally, negligently, recklessly, wantonly, unreasonably and/or arbitrarily in their conduct, activities and statements regarding Elise.

55.     As a direct and proximate result of the foregoing conduct, actions and omissions of Defendants, and each of them, jointly and severally, Elise suffered violations, abridgements, invasions and infringements on her rights, freedoms and liberties protected by the Constitution and laws of the United States, and thereby was damaged in an amount to be proven from the evidence introduced at the trial of this matter.

15

**SECOND CLAIM FOR RELIEF**
(Pendent State Claims Against All Defendants for
<u>Violations of the Constitution of the State of Ohio</u>)

56.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Fifty-five (55), inclusive, above as if the same were fully rewritten herein.

57.     The foregoing conduct, actions and omissions by Defendants, and each of them, jointly and severally, violate, abridge, invade and infringe upon the rights, freedoms, and liberties protected by the Constitution of the State of Ohio in Article I, sections 3 (right to assemble and associate), 14 (right to be free from unreasonable searches and seizures), 16 (rights to redress for injury and due process of law), and 20 (rights to privacy and reputational rights not enumerated are reserved to the people).

58.     As a direct and proximate result of the foregoing conduct, actions and omissions of Defendants, and each of them, jointly and severally, Elise suffered violations, abridgements, invasions and infringements on her rights, freedoms and liberties protected by the Constitution of the State of Ohio. Elise was thereby damaged in an amount to be proven from the evidence introduced at the trial of this matter.

**THIRD CLAIM FOR RELIEF**
(<u>Pendent State Claim for Falsification Against Dannelly, NCAA and Does I-V</u>)

59.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Fifty-eight (58), inclusive, above as if the same were fully rewritten herein.

60.     The conduct, actions and omissions by Dannelly, the NCAA and Does I-V, and each of them, alleged in Paragraphs 47 and 48 above constitute "Falsification" and violate the provisions of R.C. 2921.13(A)(2) and R.C. 2921.13(A)(3), constituting misdemeanors of the first degree pursuant to R.C. 2921.13(F)(1).

61.     Dannelly, the NCAA and Does I-V, and each of them, are liable to Elise in this civil action for the harm caused by the violations resulting from their respective commission of the offenses

16

of Falsification, and for reasonable attorneys' fees, court costs and other expenses incurred in this civil action pursuant to the provisions of R.C. 2921.13(G).

62.     Dannelly, the NCAA and Does I-V, and each of them, are liable to Elise in this civil action for full damages to compensate her for the personal injuries she suffered as a result of their respective criminal acts, along with the costs of maintaining this action and attorneys' fees, and for punitive or exemplary damages in accordance with the provisions of R.C. 2307.60.

63.     As a direct and proximate result of the wrongful actions and omissions of Dannelly, the NCAA and Does I-V, and each of them, Elise suffered severe mental anguish and emotional distress, some or all of which was the deliberate consequence and result intended by Dannelly and Does I-V, and each of them.

**FOURTH CLAIM FOR RELIEF**
(Pendent State Claim of Negligence by the Four Police Officers, Capital and Bexley)

64.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Sixty-three (63), inclusive, above as if the same were fully rewritten herein.

65.     While acting within the course and scope of their employment by Capital, Officer Day, Officer Zaghmot and Officer Hall, and each of them, breached their duties under Ohio law to protect Elise from injury to her protected rights, freedoms and liberties under federal and state laws. Officer Day, Officer Zaghmot and Officer Hall, and each of them, acted negligently, recklessly, wantonly and with malicious purpose (i) to deprive Elise of her protected rights, freedoms and liberties whether or not the allegations were true that Elise had engaged in wrongful conduct or misdemeanors committed outside their presence, and (ii) in failing to adequately and reasonably investigate, evaluate, verify, substantiate and corroborate the information allegedly provided to them by Dannelly, the NCAA, and/or Does I-V, all of which violated applicable standards of due care.

66.     While acting within the course and scope of his employment by Bexley, Officer Grimes breached his duties under Ohio law to protect Elise from injury to her protected rights, freedoms and

liberties under federal and state laws. Officer Grimes acted negligently, recklessly, wantonly and with malicious purpose (i) to deprive Elise of her protected rights, freedoms and liberties whether or not the allegations were true that Elise had engaged in wrongful conduct or misdemeanors committed outside his presence, and (ii) in failing to adequately and reasonably investigate, evaluate, verify, substantiate and corroborate the information allegedly provided to him by Dannelly, the NCAA, and/or Does I-V, all of which violated applicable standards of due care.

67. Capital is vicariously liable under principles of respondeat superior for the damages directly and proximately caused by the negligence and deliberate indifference of Officer Day, Officer Zaghmot, and Officer Hall, and each of them, acting within the course and scope of their respective employment.

68. Bexley is vicariously liable under principles of respondeat superior for the damages directly and proximately caused by the negligence and deliberate indifference of Officer Grimes acting within the course and scope of his employment.

## FIFTH CLAIM FOR RELIEF
(Pendent State Claim of False Arrest and False Imprisonment Against Officer
Day, Officer Zaghmot, Officer Hall, Officer Grimes, Capital and Bexley)

69. Plaintiff realleges and incorporate by reference the allegations set forth in Paragraphs One (1) through Sixty-eight (68), inclusive, above as if the same were fully rewritten herein.

70. Officer Day, Officer Zaghmot, Officer Hall, and Officer Grimes, and each of them, jointly and severally, intentionally and wrongfully detained Elise and limited, restrained and restricted Elise's personal freedom against her will and without her consent when they ejected and removed her from her seat in the Capital Center Performance Arena on March 16, 2024. She was not free to go where she chose, with whom she chose, or for as long as she chose. She was not free to stay in her seat with her family, and her freedom of movement was limited to one choice – she was required only to go with the four officers and leave the game, the arena, and the premises, as directed and instructed

by the four officers.

71.     Officer Day, Officer Zaghmot, Officer Hall, and Officer Grimes, and each of them, intended to detain Elise, to limit, restrain and restrict her personal freedom without her consent, to forcibly remove her from her seat as a spectator in the Capital Center Performance Arena bleachers, and to go only one place – out of the game, out of the arena, and off the premises – as they instructed.

72.     The four Officers' detention of Elise, and their limitation, restraint and restrictions on her personal freedom against her will and without her consent, was wrongful and unlawful because it was based either on false accusations that the four Officers failed adequately and reasonably to investigate, verify, substantiate and/or corroborate, or on no facts, information or evidence whatever because Elise's alleged misbehavior occurred out of the Officers' presence.

73.     Capital is vicariously liable under principles of respondeat superior for the tortious actions, failures and conduct of Officer Day, Officer Zaghmot and Officer Hall who at all relevant times were acting within the course and scope of their employment on March 16, 2024.

74.     Capital and Bexley are vicariously liable under principles of respondeat superior for the tortious actions, failures and conduct of Officer Grimes who was at all relevant times acting within the course and scope of his employment on March 16, 2024.

75.     As a direct and proximate result of Elise's false arrest and false imprisonment on March 16, 2024, by the intentional acts of Officer Day, Officer Zaghmot, Officer Hall and Officer Grimes, and each of them, by detaining Elise and limited, restraining and restricting her personal freedom against her will and without her consent, Elise suffered damage and injury to her liberty interests while also experiencing severe mental anguish and emotional distress.

**SIXTH CLAIM FOR RELIEF**
(Pendant State Claim for False-Light Invasion
of Privacy Against All Defendants)

76.     Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs

One (1) through Seventy-five (75), inclusive, above as if the same were fully rewritten herein.

77. By making false claims that Elise was disturbing the peaceful enjoyment of the game for other spectators and participants and thereafter falsely and wrongfully instructing the four Police officers to eject Elise from the game, and by the obvious consequence of such instructions in forcibly ejecting Elise in full view of the entire arena including without limitation hundreds of Smith College and NYU fans, team members, coaches, parents, other family members, and unaffiliated members of the public, all Defendants – Dannelly, the NCAA, Does I-V, Officer Day, Officer Zaghmot, Officer Hall, Capital, Officer Grimes, and Bexley – gave publicity to a private matter concerning Elise.

78. The publicity attendant to Elise's very public ejection from the game and the arena placed Elise in a false light of someone who had committed wrongful acts or conduct bad enough and/or disruptive enough to warrant ejection and removal from the game and the facility.

79. The false light into which Elise was placed by Defendants' actions was highly offensive to Elise and would be highly offensive to any reasonable person under the same or similar circumstances.

80. Defendants, and each of them, had actual knowledge of the falsity of the publicized matter and the false light in which Elise would be placed, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Elise would be placed.

81. As a direct and proximate result of the wrongful acts of Defendants, and each of them, Elise suffered injury to her privacy interests protected by the Fourth and Ninth Amendments to the United States Constitution and by Ohio law, and suffered severe mental anguish, emotional distress and humiliation as a result.

### SEVENTH CLAIM FOR RELIEF
(Pendant State Claim for Defamation Against All Defendants)

82. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Eighty-one (81), inclusive, above as if the same were fully rewritten herein.

83. The foregoing actions of all Defendants, and each of them, leading to the forcible ejection of Elise from the basketball game on March 16, 2024, and parading her out of the Capital Center Performance Arena in the custody of four uniformed police officers and in full view of hundreds of other spectators, was the functional equivalent of publishing a statement or statements about Elise that she had committed a crime or other wrongful conduct that deserved to be punished and justified expulsion from the premises, and was reasonably understood by the other spectators, members of the public and third-parties at the game as such.

84. Each of the Defendants either intentionally or negligently published the false and defamatory statements about Elise – that by the conduct being exhibited Elise had committed a crime or other wrongful conduct that deserved to be punished and justified expulsion from the premises – to the members of the public and community who were spectators, fans, players, coaches and members of both teams and the college or university they represented, officials and other workers at the game, parents, family members of the players and other third parties who were not privileged to receive any such publication.

85. The false statements about Elise that all Defendants either intentionally or negligently published to the public and spectators at the game when she was unceremoniously paraded out of the arena, to the jeers and cat-calls of many of the Smith College fans, was defamatory per se because the actions and tableau being displayed was the functional equivalent of statements that Elise had committed a crime or other wrongful act that deserved to be punished and justified expulsion from the game and from the premises.

86. As a direct and proximate result of the wrongful acts of Defendants, and each of them, Elise suffered injury to her reputational interests protected by Ohio law, and suffered severe mental anguish, emotional distress and humiliation as a result.

**EIGHTH CLAIM FOR RELIEF**
(Pendant State Claim for Intentional Infliction of
Emotional Distress Against All Defendants)

87. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs One (1) through Eighty-six (86), inclusive, above as if the same were fully rewritten herein.

88. Pursuant to their actions described in detail above, each Defendant intended to cause, or knew or should have known that his, her or its respective actions would result in, serious emotional distress to Elise.

89. Each Defendant's conduct was so extreme and outrageous that it went beyond all bounds of decency and can be considered completely intolerable in a civilized community.

90. Each Defendant's actions directly and proximately caused psychological injury to Elise.

91. As a direct and proximate result, Elise has suffered serious mental anguish and emotional distress of a nature no reasonable person could be expected to endure.

WHEREFORE, Plaintiff, Elise G. K. Morrison, hereby demands judgment against Defendants, National Collegiate Athletic Association, Bethany Dannelly, Officer Preston Day, Officer Duaa Zaghmot, Officer Marcus Hall, Capital University, Officer Jeremy Grimes, City of Bexley, Ohio, and John Does I-V, and each of them, jointly and severally, for:

1. compensatory damages in an amount in excess of Twenty-five Thousand Dollars ($25,000.00) as proven at trial with respect to each claim for relief;

2. punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) with respect to each claim except the Fourth Claim for Relief;

3. prejudgment interest from and after March 16, 2024, and post-judgment interest at the maximum rate allowed by law;

4. the costs of this action, including reasonable attorneys' fees pursuant to the provisions

of 42 U.S.C. § 1988 and otherwise; and

5.      such other and further relief as the Court may deem just and proper.

/s/ *Eric H. Zagrans*
Eric H. Zagrans (0013108)
ZAGRANS LAW FIRM LLC
1640 Roundwyck Lane
Columbus, Ohio 43065-8416
(440) 452-7100 (telephone)
eric@zagrans.com (e-mail)

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

/s/ *Eric H. Zagrans*
Eric H. Zagrans