**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Elise G.K. Morrison, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:25-cv-00254 |
| | : | |
| v. | : | Judge Michael H. Watson |
| | : | |
| National Collegiate Athletic Association, et.al., | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| | : | |
| Defendants. | : | |

**MOTION OF DEFENDANTS CAPITAL UNIVERSITY,
PRESTON DAY AND DUAA ZAGHMOT
FOR JUDGMENT ON THE PLEADINGS**

Now come Defendants Capital University, Preston Day, and Duaa Zaghmot ("collectively, the "University Defendants"), by and through counsel, and respectfully move this Court, pursuant to Fed.R.Civ.P. 12(c), for an Order granting them judgment on the pleadings with respect to the claims asserted against them in Plaintiff's Complaint, *i.e.,* Counts One, Two, Four, Five, Six, Seven and Eight. A memorandum in support is attached.

Respectfully submitted,

**LUPER NEIDENTHAL & LOGAN**
*A Legal Professional Association*

　　　*/s/ Christopher E. Hogan*
Christopher E. Hogan　　　　　　　(0070236)
chogan@lnlattorneys.com
1160 Dublin Road, Suite 400
Columbus, Ohio 43215
Telephone:　(614) 221-7663
Facsimile:　(866) 345-4948
*Counsel for Defendants Capital University, Preston Day, and Duaa Zaghmot*

**MEMORANDUM IN SUPPORT**

I.  **INTRODUCTION**

Plaintiff alleges that she was unlawful ejected from the audience of the championship game of the 2024 D-III Women's Basketball Tournament (the "Game") between NYU and Smith College, which was held on March 16, 2024 at Defendant Capital University's ("Defendant University") Capital Center Performance Arena (the "Arena"). Plaintiff alleges that the event was sponsored by Defendant NCAA and that the Tournament Director, Defendant, Bethany Dannelly, made false statements about Plaintiff's conduct at the Game and directed that Plaintiff be escorted out of the Arena. Plaintiff alleges that three members of Defendant University's campus police department (the "University Police Defendants") (collectively, the "University Defendants"), along with a member of the City of Bexley's Police Department (Defendant Jeremy Grimes), approached her after halftime and asked her to leave, which she did. Plaintiff watched the remainder of the game on her phone from the Arena parking lot.

On March 14, 2025, Plaintiff filed this action against the University Defendants, as well as a number of other parties. Plaintiff's Complaint asserts seven claims against the University Defendants, all but one of which arises under state law. Count One of the Complaint purports to set forth claims against Defendant University and the University Police Defendants under Section 1983 for alleged violations of her federal constitutional rights. (Complaint, ¶¶ 45-55.) Counts Two, Four, Five, Six, Seven and Eight purport to set forth claims against them under Ohio law for violation of the Ohio Constitution (Id., ¶¶ 56-58); Negligence (Id., ¶¶ 64-68); False imprisonment/arrest (Id., ¶¶ 69-75); False light invasion of privacy (Id., ¶¶ 76-81); Defamation (Id., ¶¶ 82-86); and Intentional Infliction of Emotional Distress (Id., ¶¶ 87-91), respectively.

2

For the reasons that follow, Plaintiff's Complaint fails to plausibly allege a Section 1983 claim against either Defendant University or the University Police Defendants. Moreover, the University Police Defendants would be entitled to qualified immunity in connection with any such claim. Moreover, the face of Plaintiff's Complaint makes clear that her purported claims under state law fail to state a claim.

## II. LAW AND ARGUMENT

### A. Count One of Plaintiff's Complaint does not Plausibly Allege a Deprivation of a Federal Right and thus Fails to State a Claim under 42 U.S.C. §1983

Count One of Plaintiff's Complaint purports to set forth a claim under Section 1983 against "all defendants." (Complaint, ¶¶ 45-55.) To establish a claim under 42 U.S.C. §1983, a plaintiff must plausibly allege both a violation of a right secured by the federal Constitution or laws and that the deprivation was committed by a person acting under color of state law. *Thompson v. Flaherty,* S.D.Ohio No. 2:08-cv-500, 2010 U.S. Dist. LEXIS 104751, at *7-8 (Sep. 14, 2010) (Watson, J.) (citations omitted). Since Section 1983 does not create any rights but is merely a vehicle to enforce certain federal rights, "the first step in the analysis is to determine which federal rights, if any, were violated." *Id.* (citations omitted).

Plaintiff's Complaint alleges that "Dannelly, the NCAA, and Does I-V" made false statements to the University and Bexley police officers that caused her "to be wrongfully and unjustifiably ejected from the basketball game, arena and entire premises on March 16, 2024." (Complaint, ¶ 47.) Plaintiff alleges that her ejection violated her:

> privileges and immunities secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States including, without limitation, (i) the right to be free from deprivations of liberty without due process, (ii) the right to be protected from unreasonable intrusions on liberty without adequate verification of the facts or reasonable suspicion of unlawful conduct, (iii) the right to peaceably assemble and freely associate with others, (iv) the right to privacy and to be free from invasions of privacy creating publicity that unreasonably places a

3

>person in a false light which would be highly offensive to a reasonable person, and (v) the right to be protected from harm to one's reputational interests by the unprivileged publication of false statements.

(Complaint, par. 46.)

Simply put, there is no constitutional right to attend or remain a private sporting event. Generally, sports seating is a matter of contract, not constitutional law. For example, in *McElhaney v. Williams,* the Sixth Circuit ruled that the plaintiff did not have a constitutionally protected property interest in his season tickets to his daughter's high school softball games, as tickets and seating were a matter of contact. *See* 81 F.4th 550, 560 (6th Cir. 2023). More generally, the Court of Appeals for the Eighth Circuit has concluded that the purchase of a ticket to a private event does not give rise to any constitutional rights, even if the event is a political gathering. *See McIntosh v. Arkansas Republican Party—Frank White Election Comm.,* 766 F.2d 337, 341 (8th Cir. 1985); *Harr v. Brodhead*, M.D.N.C. No. 1:11CV263, 2012 U.S. Dist. LEXIS 28450, at *6 (Mar. 5, 2012) ("What Plaintiff overlooks is that Duke University is a private institution, and thus Plaintiff was at all times on private property when the alleged events took place.")

Here Plaintiff had no constitutional right to attend or remain at the Game. Moreover, her Complaint makes clear that she was neither searched nor arrested, at least at the hands of the University Police Defendants; instead, she was escorted out of the Arena, which was under the Sponsor's control at the time, but was otherwise free to remain on campus and in fact watched the remainder of the game from her phone in the parking lot. (Complaint, pars. 24, 26, 34-38.) These allegations simply fail to plausibly allege a violation of Plaintiff's federal rights.

Plaintiff's allegations are in contrast to *Parks v. City of Columbus,* 395 F.3d 643 (6th Cir. 2005). In that case, a private entity operated an arts festival on a barricaded portion of a city street. The event was open to the public. No tickets were required. *Id.* at 645. There, the plaintiff attended

4

the event and began engaging in religious expression protected by the First Amendment. In response, the event sponsor directed an off-duty municipal police officer who was working the event on behalf of the event sponsor to inform the plaintiff to either cease his religious activities or conduct them outside the barricade. When the plaintiff objected, the off-duty police officer threatened the plaintiff with arrest, at which point the plaintiff left the event. *Id.* at 646.

In finding that the plaintiff's First Amendment rights had been violated, the Sixth Circuit found that it was undisputed that Plaintiff was engaging in activities protected by the First Amendment and that the city street remained a "traditional public forum" notwithstanding the privately-sponsored arts festival. *Id.* at 647-648, 652. Here Plaintiff's Complaint does not contain well-pled allegations that she was engaging in any constitutionally protected activity at the time of her ejection or that the Arena was a "traditional public forum."

Because Plaintiff has failed to plausibly allege a violation of her federal rights at that hand of the University Defendants, they are entitled to judgment on the pleadings on Count One of Plaintiff's Complaint, pursuant to Fed.R.Civ.P. 12(c). As a result, the Court need not address the University Defendants' remaining arguments as to why Count One fails to state a claim.

### 1. Even if Plaintiff Suffered a Deprivation of a Federal Right, there is no Basis for Holding Defendant Capital University Liable under 42 U.S.C. §1983

Section 1983 liability can only be imposed on a private corporation, like Defendant University, where the private corporation's actions are (1) "fairly attributed to the state" (i.e., it engaged in "state action") and (2) the elements of *Monell v. Department of Social Servs.,* 436 U.S. 658 (1978) are met. *See Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir. 2000) (state action requirement); *Street v. Corr. Corp. of Am.,* 102 F.3d 810, 818 (6th Cir. 1996) (Section 1983 liability for private entity governed by *Monell*). Under *Monell,* Section 1983 liability may only be

5

imposed on an entity when (1) agents of the entity, while acting under color of state law; (2) violated the plaintiff's constitutional rights; and (3) that a municipal policy or policy of inaction was the moving force behind the violation. *City of Canton v. Harris,* 489 U.S. 378, 379 (1989).

As discussed above, as a threshold matter, Plaintiff has not sufficiently alleged a violation of her federal rights. For that reason alone, her Section 1983 claim should be dismissed. *See North v. Cuyahoga Cty.,* 754 F. App'x 380, 389 (6th Cir. 2018) ("There must be a constitutional violation for a §1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his Monell claim fails."). However, even if Plaintiff had sufficiently alleged a deprivation of her federal rights, her complaint fails to plausibly allege that Defendant Capital University engaged in "state action" in connection with any alleged violation or had an official policy or practice that was the "moving force" behind the violation. These additional two failings are discussed in turn.

### a. Plaintiff has not Plausibly Alleged that Defendant Capital University acted "Under Color of Law" or engaged in "State Action"

Whether state action exists is a question of law to be determined by the Court. *See Neuens v. City of Columbus,* 303 F.3d 667, 670 (6th Cir. 2002). Here there is no dispute that Defendant Capital University is a private institution. (Complaint, ¶11; Answer of the University Defendants, ¶11.) A private entity, such as Defendant University, can only be deemed to have engaged in state action when "its actions so approximate state action that they may be fairly attributed to the state." *Lansing, supra,* 202 F.3d at 828.

The Sixth Circuit applies three tests to determine whether a private entity defendant's actions are "fairly attributed to the state." *See id.* at 828-30. The "public function" test requires that "the private entity exercise powers which are traditionally exclusively reserved to the state[.]" *Id.* at 828 (citation omitted). The "state compulsion" test requires that the "state exercise such

6

coercive power or provide such significant encouragement" that the private actor's choice "is deemed to be that of the state." *Id*. at 829 (citation omitted). Finally, the "nexus" test requires a "sufficiently close nexus between the state and the challenged action" such that the private entity's action "may be fairly treated as that of the state itself." *Id*. at 830 (citation omitted). Notably, the fact that a private school is heavily regulated and receives state or federal funds does not convert its actions to those of the state. *Rendell-Baker v. Kohn,* 457 U.S. 830, 840 (1982) (private school's personnel decisions not attributable to the state even though "virtually all of the school's income was derived from government funding").

Here, according to Plaintiff's Complaint, the University, a private entity, permitted other private entities to use one of its facilities for a sporting event. Such activities are not traditionally reserved to the state; nor are they compelled by the state. Further, the Complaint does not allege that a state entity or actor played any role in the University's hosting of the event. Because Defendant University's lease of space to private entities cannot be "fairly attributed to the state," Plaintiff's Section 1983 claim fails for want of state action.

Finally, to the extent Plaintiff's Complaint attempts to allege state action flowing from a conspiracy between the University Defendants and a "state actor," the claim is not plausibly pled. To establish such a claim, Plaintiff would have to allege well-pled facts that show that the University Defendants "willfully participate[d] in joint action with state agents." *See Weser v. Goodson,* 965 F.3d 507, 516 (6th Cir. 2020) (citation omitted). To that end, a plaintiff must allege that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir. 2007); *see also Rudd v. City of Norton Shores,* 977 F.3d 503, 517 (6th Cir. 2020). "A complaint must identify the alleged conspiracy with more than vague and conclusory

allegations." *Rudd,* 977 F.3d at 517 (citation omitted); *see also Spadafore v. Gardner,* 330 F.3d 849, 854 (6th Cir. 2003) ("it is well-settled that conspiracy claims must be pled with some degree of specificity. . . ." (citation omitted)). Plaintiff's Complaint does not plausibly allege any of these elements.

Therefore, Plaintiff's claim in this regard fails for want of state action.

### b. Plaintiff has not Plausibly Alleged any basis for Imposing Monell Liability on Defendant Capital University

To the extent the Court finds that Plaintiff has plausibly alleged a deprivation of a federal right and that Defendant University held the status of a "state actor" in connection with the events alleged in Plaintiff's Complaint, her Section 1983 claim against it must still fail. As explained below, Plaintiff's Complaint does not plausibly allege that the deprivation of her federal rights was caused by an official policy or practice of Defendant University. Instead, Plaintiff's Complaint sounds in *respondeat superior*, a theory rejected by *Monell* and inconsistent with allegations in the Complaint that the University Police Defendants were acting at the direction of the tournament director.

Under *Monell*, organizational liability cannot be premised on the acts of its agents or employees under the doctrine of *respondeat superior.* Instead, the organizational defendant can only be held liable for its own conduct. *Monell,* 436 U.S. at 694-695. To that end, Plaintiff must plausibly allege that the complained of deprivation of her federal rights was caused by an official policy or custom of the University. *Johnson v. Karnes,* 398 F.3d 868, 877 (6th Cir. 2005). A "custom" for the purposes of *Monell* liability must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty. Bd. of Educ.,* 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell,* 436 U.S. at 690-91).

8

"To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient." *Martin v. City of Columbus,* S.D.Ohio No. 2:03cv161, 2005 U.S. Dist. LEXIS 24207, at *10 (Oct. 19, 2005) (Watson, J.) (citations omitted).

Here Plaintiff's Complaint presents precisely the type of conclusory allegations this Court has cautioned against. Plaintiff alleges:

> The rules, regulations, customs, policies, practices and procedures of Capital and Bexley, and each of them, regarding the investigation, evaluation, verification, substantiation and corroboration of information about alleged misdemeanor activities conducted outside the presence of their respective officers were inadequate and unreasonable, and constituted, caused or were the moving forces behind the constitutional deprivations suffered by Elise.

(Complaint, par. 52.) Moreover, this allegation contradicts Plaintiff's earlier conclusory assertion that "Dannelly, the NCAA, and Does I-V" caused Plaintiff's ejection by making false statements about Plaintiff to the University police officers. (Complaint, ¶ 47.) Indeed, according to the Complaint, the University Police Defendants acted at the behest of the NCAA tournament director, not the University. In doing so, they were facilitating the private lessee's decision about whether Plaintiff's behavior warranted ejection from the event, a matter of contract between Plaintiff and the NCAA.

Finally, to the extent Plaintiff is attempting to impose *Monell* liability on the University under a "failure to train" theory, the allegations in her Complaint fail to state a claim. In order to establish a failure to train or supervise claim under Section 1983, Plaintiff must prove that: "(1) the training or supervision of city employees was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Mosier v. Evans,* 90 F.4th 541, 549 (6th Cir. 2024) (citation omitted). To make a showing of "deliberate indifference," a plaintiff must show the

9

municipality "completely disregarded" its duty to train evidenced by "total inaction in the face of repeated, known, rights violations." *Id.*

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Martin v. City of Columbus,* S.D.Ohio No. 2:03cv161, 2005 U.S. Dist. LEXIS 24207, at *11 (Oct. 19, 2005) (Watson, J.) (quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 397, 137 L. Ed. 2d 626, 117 S. Ct. 1382 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* (citing *Stemler v. City of Florence,* 126 F.3d 856, 867 (6th Cir. 1997)).

The face of Plaintiff's Complaint reveals that her removal was not part of a pattern of "repeated, known, rights violations" to which the University was deliberately indifferent. Instead, the incident appears to be unique and did not involve a constitutional violation, as the University Police Defendants were essentially functioning as ushers conveying a directive that Plaintiff leave the game.

Thus, even if Defendant University occupied the status of a "state actor" during the events set forth in the Compliant, there is no basis for imposing *Monell* liability.

### 2. Plaintiff's Section 1983 Claims against the Individual University Police Defendants should be Dismissed

In light of Plaintiff's failure to plausibly allege a violation of her constitutional rights, the Court need not reach the question of whether her Complaint sufficiently alleges the other elements necessary to make out Section 1983 claims against the University Police Defendants. However, to the extent these issues are not moot, Plaintiff fails to plausibly allege facts that would establish that they were acting "under color of law" at the time they escorted Plaintiff out of the arena. Moreover, even if Plaintiff could make such a showing, the University Police Defendants would be entitled to qualified immunity.

10

> a. **Plaintiff's Complaint fails to sufficiently allege that the University Police Defendants were acting under color of law when they escorted her out of the Arena**

At the outset, the University Defendants concede that its campus police officers generally have arrest authority and all the accoutrements of a police officer. They also acknowledge that Plaintiff alleges that they approached her "in full uniform and gear (guns, radios, bullet-proof vests, etc.)." (Complaint, ¶ 24.) However, the Complaint fails to allege that the University Police Officers ever exercised that authority during the events in question. Instead, the face of the Complaint makes clear that they acted as agents of the event sponsor, essentially serving as ushers in this context.

This is in contrast to *Parks v. City of Columbus, supra.* There, the off-duty municipal police officer who was working the event in a special duty capacity, as was the case here, was found to have acted under color of law in large part because he threatened to arrest the plaintiff if he did not leave the barricaded area. *See* 395 F.3d at 652-653. Here the Complaint makes clear that the University Police Defendants made no such threat and essentially acted as ushers in escorting Plaintiff out of the Arena at the direction of the private event sponsor. Accordingly, the University Police Defendants were not acting under "color of law" when they escorted Plaintiff out of the Arena. Anyone could have done that.

> b. **The University Police Defendants are entitled to qualified immunity**

Assuming Plaintiff has otherwise plausibly alleged the elements of a Section 1983 claim against the University Police Defendants, her claims for money damages are barred by the doctrine of qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). While a defendant bears the burden of pleading

11

the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. *Sheets v. Mullins,* 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted). The applicability of qualified immunity is a question of law for the Court. *Flint ex rel. Flint v. Ky. Dep't of Corr.,* 270 F.3d 340, 346 (6th Cir. 2001) ("Qualified immunity is a question of law[.]")

In the Sixth Circuit, the applicability of qualified immunity involves a three-part analysis. First, the Court determines whether a constitutional violation occurred; second, it determines whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, it determines whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*) (citation omitted).

As noted above, Plaintiff's Complaint does not plausibly allege a deprivation of her federal rights. Attendance at private sporting events is not a constitutional right but a matter of contract. *McElhaney, supra.* 81 F.4th at 560. Moreover, being escorted off private property by a police officer without more does not give rise to an unconstitutional arrest or seizure. *See Leta v. Hamilton Cty. Dept. of Job & Family Servs.,* 668 F. Supp. 3d 724, 742 (S.D.Ohio 2023)(collecting cases), *affirmed by Leta v. TriHealth, Inc.,* 6th Cir. No. 23-3406, 2024 U.S. App. LEXIS 1548 (Jan. 22, 2024) (unpublished). The University Defendants have not located any authority in effect on or before March 16, 2024 that would suggest that Plaintiff's ejection from the Game violated her clearly established constitutional rights or that the University Police Officers acted in an objectively unreasonable manner in light of any such clearly established constitutional rights. On

12

the contrary, police are frequently asked to by private property owners and licensees to escort unwanted individuals off premises.

For these reasons, the Capital University Police Defendants are entitled to judgment on the pleadings on Count One of Plaintiff's Complaint for the additional reason that they are entitled to qualified immunity.

### 3. Any Claims for Injunctive Relief should be Dismissed

Plaintiff's Complaint suggests that she is suing the University Police Defendants in both their individual and official capacities. (Compliant, ¶¶ 8, 9, 10.) Although the Prayer in Plaintiff's Complaint does not contain a request for injunctive relief (Complaint, PageID#22-23), the only reason to inflict litigation on the University Police Defendants in their official capacities would be to seek non-monetary relief against them. To the extent Plaintiff's Complaint is seeking injunctive relief against the University Police Defendants, it fails to state a claim. First, for the reasons stated above, Plaintiff's Complaint fails to state a claim against the University Police Defendants. Therefore, Plaintiff's claims for injunctive relief likewise fail. *See e.g., Villavicencio v. City of Columbus,* S.D.Ohio No. 2:25-cv-134, 2025 U.S. Dist. LEXIS 118523, at *11 (June 23, 2025) (Watson, J.) ("Because none of Plaintiff's claims are viable in this Court, his request for injunctive relief also fails.") Additionally, Plaintiff's Complaint does not identify any ongoing violations of federal law that would support a request for prospective equitable relief. *See e.g, Austin v. Kasich,* S.D.Ohio No. 2:12-cv-983, 2013 U.S. Dist. LEXIS 46059 (Mar. 29, 2013) (Watson, J.). Therefore, any claims against the University Police Defendants in their official capacities should be dismissed.

### B. The University Defendants are Entitled to Judgment on the Pleadings with Respect to Plaintiff's Claims State Law Claims Against them in Counts Two, Four, Five, Six, Seven and Eight of the Complaint

### 1. Count II fails to state a claim because there is no private cause of action for the violation of the Ohio Constitution

Plaintiff's Second Cause of Action purports to assert a cause of action for money damages against all defendants for violations of the Ohio Constitution. (Complaint, ¶¶ 56-58.) Ohio courts, however, have consistently held that there is no private cause of action for damages based on violations of the Ohio Constitution. *See Harris v. City of Columbus,* 2016-Ohio-1036, ¶ 24 (10th Dist.) (citing *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities,* 64 Ohio St.3d 252, 261, 1992 Ohio 35 (1992)) (finding no private cause of action for torts allegedly arising under the Ohio Constitution); *see also PDU, Inc. v. City of Cleveland,* 2003-Ohio-3671, ¶ 18 (8th Dist.) (same). Therefore, Plaintiff's Second Cause of Action fails to state a claim and accordingly the University Defendants are entitled to judgment on the pleadings in connection with the same.

### 2. Count Four of the Complaint fails to state a claim of negligence against the University Defendants because Count Four is premised on breach of contract, not a breach of duty

Count Four of Plaintiff's Complaint purports to allege a cause of action for common law negligence against, among others, the University Defendants. (Complaint, ¶¶ 64-68.) However, "[i]n Ohio, a breach of contract does not create a tort claim." *22 Exchange, LLC v. Exchange St. Assocs., LLC,* 9th Dist. Summit No. 27472, 2015-Ohio-1719, ¶ 27 (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.,* 115 Ohio App.3d 137, 151, 684 N.E.2d 1261 (9th Dist. 1996)). As noted above, Plaintiff's presence at a private event was purely a matter of her contract with the NCAA as an event ticket holder. Plaintiff's Complaint fails to plausibly allege what duty the University Defendants owed Plaintiff or how they breached it. The face of Plaintiff's complaint reveals that the Defendant University played no direct role in this matter and that the University Police Defendants were acting at the direction of the tournament director. Thus, Plaintiff's right to attend the event flowed directly from the ticket contract, not tort law. Therefore, in the absence of the

14

University Defendants breaching some independent duty owed to Plaintiff, Count Four of Plaintiff's Complaint fails to plausibly allege a claim of negligence against them.

### 3. Count Five of the Complaint fails to state a claim for false arrest and/false imprisonment against the University Defendants because Plaintiff was not arrested or detained

Count Five of Plaintiff's Complaint purports to set forth a cause of action for false arrest/imprisonment against, among others, the University Defendants. (Complaint, ¶¶ 69-75.) These claims, at least as they relate to the University Defendants, should be dismissed, as the face of Plaintiff's Complaint demonstrates that they neither arrested nor detained Plaintiff.

Claims for false arrest and false imprisonment require proof of the same essential elements. A false arrest and false imprisonment claim is made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. *Barnes v. Meijer Dep't. Store,* 2004-Ohio-1716, ¶ 15 (12th Dist.). To establish a claim for false imprisonment, one must prove by a preponderance of the evidence that he was intentionally detained or confined without lawful privilege and against his consent. Id.

Here, Plaintiff was not seized or otherwise detained by any of the University Defendants. Instead, the Complaint makes clear that Plaintiff was simply escorted out of the Arena. In fact, Plaintiff concedes in her Complaint that she even *returned* to the Arena after being escorted out, which is utterly inconsistent with her claim that she was arrested or imprisoned. (*See* Complaint, ¶27 "…Elise calmly walked back into the arena[.]") "The key question is whether a reasonable person can "terminate the encounter" with police. A person who is told to leave one place but remains free to go anywhere else that he wishes can undoubtedly terminate [the] encounter." *Leta, supra,* 668 F. Supp. 3d at 742 (quoting *Peery v. City of Miami,* 977 F.3d 1061, 1071 (11th Cir. 2020)).

In sum, Plaintiff's Complaint fails to plausibly allege that she was either arrested or imprisoned by the University Defendants.

### 4. Count Six of Plaintiff's Complaint alleging false light invasion of privacy fails to state a claim against the University Defendants because they did not publicize private facts about the Plaintiff

Count Six of Plaintiff's Complaint purports to allege a cause of action against "all defendants" for false light invasion of privacy. (Complaint, ¶¶ 76-81.) One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Welling v. Weinfield,* 2007-Ohio-2451, ¶ 61.

Here Plaintiff's claim appears to be based on her being escorted out of the arena. However, the Complaint fails to allege what false information the University Defendants communicated about Plaintiff. If anything, this occurrence simply communicated the true fact that PLAINTIFF was being asked to leave the Game, which could occur for a number of reasons. That Plaintiff chose to flip off and yell at the crowd as she was escorted out communicated far more information than the mere presence of the University Police Defendants.

### 5. Count Seven of Plaintiff's Complaint alleging defamation fails to state a claim because the University Defendants did not publicize any false statements about Plaintiff, and the statements in the incident report are subject to an absolute privilege.

Count Seven of Plaintiff's Complaint purports to allege a cause of action for defamation under Ohio law against all defendants. (Complaint, ¶¶ 82-86) "Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." *Kanjuka v. Metrohealth Med. Ctr.*,

16

2002-Ohio-6803, ¶ 15 (8th Dist.). "The essential elements of a defamation action are a false statement, that the false statement was defamatory, that the false defamatory statement was published, the plaintiff was injured and the defendant acted with the required degree of fault." Id. "There are two forms of defamation: libel or slander. Generally, slander refers to spoken defamatory words and libel refers to written defamatory words." Id.

There is no allegation in the Complaint that the University Defendants made any statements about Plaintiff other than those that were in the incident report, which are subject to an absolute privilege under Ohio law. *Mettke v. Mouser,* 10th Dist. No. 12AP-1083, 2013-Ohio-2781, ¶ 7 (citing *Lee v. Upper Arlington,* 10th Dist. No. 03AP-132, 2003-Ohio-7157, ¶¶ 14-19).

Instead, Plaintiff claims that the Defendant Officers' escorting her out of the Arena was the "functional equivalent of statements that [Plaintiff] had committed a crime or other wrongful act that deserved to be punished and justified expulsion from the game and from the premises." (Id., ¶ 85.). There is, however, no authority for this "functional equivalent" argument. In fact, a very similar argument was asserted unsuccessfully in *McKee v. McCann,* 2017-Ohio-7181 (8th Dist.). In *McKee*, plaintiff was stopped by security guards at a Walmart when he refused to produce a receipt when he left the store. The guards called the local police, who placed plaintiff under arrest when he refused to identify himself. Plaintiff eventually relented, identified himself, showed the police his ID, as well as the receipts for the items he bought. The police then released him without a charge. Plaintiff subsequently brought a lawsuit alleging a variety of claims, including defamation. In affirming the dismissal of the plaintiff's defamation, the court found that the defamation claim did not involve any statement by the police and was premised only the arrest itself because it was "false" and it occurred in the public. The court determined that the defamation

17

claim in this context was only "an attempt to alternatively plead a nonviable false arrest claim." Id. at ¶ 28.

As in *McKee,* Plaintiff is attempting to alternatively plead a claim for false arrest by recasting the "arrest" as a statement for the purposes of defamation. As in *McKee*, the defamation claim should be treated the same as the false arrest claim and be dismissed.

Finally, as noted above, in escorting Plaintiff out of the Arena, the only message communicated to the public was that Plaintiff was leaving the Arena with officers, which could occur for a number of reasons—for example, her car could have been hit in the parking lot; her lights could have been left on; a family member could have had a health emergency, etc. If the crowd drew an unfavorable inference from the occurrence, it was most likely due to Plaintiff's behavior before the incident; or her behavior upon leaving. Moreover, the fact that Plaintiff concedes that she was not searched or restrained in any way suggests that she was not suspected of committing a crime or being arrested.

> **6. Count Eight of Plaintiff's Complaint fails to plausibly allege a claim of intentional infliction of emotional distress against the University Defendants**

Count Eight of Plaintiff's Complaint purports to allege a claim of intentional infliction of emotional distress against "all defendants." (Complaint, ¶¶ 87-91.) To establish a claim of intentional infliction of emotional distress ("IIED"), Plaintiff must allege facts sufficient to show: (1) that the University Defendants either intended to cause Plaintiff emotional distress or knew or should have known that actions taken would result in serious emotional distress to Plaintiff; (2) that their conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that their actions were the proximate cause of Plaintiff's psychic injury; and (4) that the mental anguish

suffered by Plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Burkes v. Stidham*, 107 Ohio App.3d 363, 375, 668 N.E.2d 982 (1995). Serious emotional distress requires an emotional injury that is both severe and debilitating. Id.

To recover for IIED in Ohio, it is not enough that a defendant acts with an intent which is tortious or even criminal, or that a defendant intended to inflict emotional distress, or even that the conduct is characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Ekstrom v. Cuyahoga County Cmty. College*, 150 Ohio App. 3d 169, 182 (8th Dist. 2002). Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 374-375 (1983).

In this case, there are no allegations specific to Defendant University that would support an IIED claim. Further, the sole allegation in the Complaint as to the University Police Defendants is that they assisted in peacefully escorting Plaintiff out of the Arena at the request of the event host. Asking a patron to leave a sporting event and peacefully escorting the patron out of the building, as a matter of law, is not "extreme and outrageous" conduct.

### III. CONCLUSION

For the foregoing reasons, the Court should grant the University Defendants judgment on the pleadings pursuant to Fed.Civ.R.12(c) on all claims against them in Plaintiff's Complaint.

                                                 Respectfully submitted,

                                                 **LUPER NEIDENTHAL & LOGAN**
                                                 *A Legal Professional Association*

                                                 */s/ Christopher E. Hogan*
                                                 Christopher E. Hogan             (0070236)
                                                 chogan@lnlattorneys.com

1160 Dublin Road, Suite 400<br>
Columbus, Ohio 43215<br>
Telephone: (614) 221-7663<br>
Facsimile: (866) 345-4948<br>
*Counsel for Defendants Capital University, Preston Day and Duaa Zaghmot*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will also send such notification to:

| | |
|---|---|
| Eric H. Zagrans<br>Zagrans Law Firm, LLC<br>12640 Roundwyck Lane<br>Columbus, Ohio 43065-8416<br>*Counsel for Plaintiff* | Aneca E. Lasley<br>Erica L. Arras<br>Ice Miller LLP<br>250 West Street, Suite 700<br>Columbus, Ohio 43215<br>*Counsel for National Collegiate Athletic Association and Bethany Dannelly* |
| Aaron M. Glasgow<br>Isaac Wiles Burkholder & Miller, LLC<br>2 Miranova Place, 7th Floor<br>Columbus, Ohio 43215<br>*Counsel for City of Bexley, Jeremy Grimes* | |

                                        */s/ Christopher E. Hogan*
                                        Christopher E. Hogan    (0070236)