**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ELISE G. MORRISON,** | : | |
| | : | **Case No. 2:25-cv-254** |
| **Plaintiff,** | : | |
| | : | **Judge Watson** |
| **vs.** | : | |
| | : | **Magistrate Judge Jolson** |
| **NATIONAL COLLEGIATE ATHLETIC** | : | |
| **ASSOCIATION, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MOTION OF DEFENDANTS JEREMY GRIMES AND
## THE CITY OF BEXLEY, OHIO FOR JUDGMENT ON THE PLEADINGS

Defendants Jeremy Grimes and the City of Bexley, Ohio ("Defendants") move this Court

to dismiss the claims against them in the Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(c) for

the following reasons:

1.     The facts alleged in the Complaint do not establish that Officer Grimes violated Plaintiff's
federal constitutional rights.

2.     The facts alleged in the Complaint do not establish that Officer Grimes violated Plaintiff's
clearly established federal constitutional rights.

3.     The facts alleged in the Complaint do not establish that the moving force behind the alleged
constitutional violation was a policy, practice or custom of the City of Bexley.

4.     There is no claim for the violation of the Ohio Constitution.

5.     The City of Bexley is entitled to political subdivision immunity under R.C. 2744.02(A) for
all state law claims asserted by Plaintiff.

6.     Officer Grimes is entitled to individual immunity under R.C. 2744.03(A)(6) for all state
law claims asserted by Plaintiff.

7.     Plaintiff's claims for false arrest and/false imprisonment against Officer Grimes fail
because Plaintiff was not arrested or detained.

1

8.      Plaintiff's claim for false light invasion of privacy fails because Officer Grimes did not publicize private facts about the Plaintiff.

9.      Plaintiff's claim for defamation fails because Officer Grimes did not publicize any false statements about Plaintiff.

10.     Plaintiff's Complaint fails to allege any facts supporting a claim of Intentional Infliction of Emotional Distress against Officer Grimes.

A Memorandum in Support is attached.

Respectfully submitted,

/s/ *Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Isaac, Wiles, Burkholder & Miller, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 220-5170 / F: (614) 365-9516
aglasgow@isaacwiles.com
*Attorney for Defendants*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.  FACTS**

The following facts are taken from the Complaint and assumed to be true as required under Fed. R. Civ. P. 12(C).

On March 16, 2024, Plaintiff Elise Morrison ("Plaintiff") was present at the Capital Center Performance Arena at Capital University in Bexley, Ohio, where the Division III National Championship game was being held. (ECF 1, Complaint, ¶ 21, PageID 7). Plaintiff's younger sister, Morgan, was playing for NYU, one of the teams in the final game. (ECF 1, Complaint, ¶ 17, PageID 6).The other team in the final was Smith College. (ECF 1, Complaint, ¶ 20, PageID 6). The Complaint alleges that there was some tension between the Morrison family and Smith College because Morgan had transferred from Smith to NYU. (ECF 1, Complaint, ¶ 18, PageID 7). During the Division III semi-finals the year before, Plaintiff (as a spectator) had been ejected from the game "for acting belligerently and cursing the officials" and engaging in "questionable behavior." (ECF 1, Complaint, ¶ 19, PageID 7).

Before the final game started, Plaintiff was making her way around the court to sit with another sister when she bumped into a referee. (ECF 1, Complaint, ¶ 21, PageID 7). She apologized and had a "short, polite conversation" with the referee. Id. However, during the conversation, an NCAA official, Defendant Dannelly, approached her, told her she could not speak with the referees, and told her to "move on." (ECF 1, Complaint, ¶ 22, PageID 8). Plaintiff then sat with her sister and several other members of her family and watched the first half "without incident." Id.

At half-time, Plaintiff and her sister moved to the other side of the arena to sit with their parents. (ECF 1, Complaint, ¶ 23, PageID 8). After the beginning of the third quarter, four police officer approached her-three Capital University officers and Bexley officer Jeremy Grimes. (ECF

3

1, Complaint, ¶ 24, PageID 8). They informed her that she was being ejected from the game, but did not explain to her the reason for the ejection. Id. As she was leaving the area with the police, she alleges that Smith fans began to "jeer" her, to which she responded by flipping them off and yelling at them. (ECF 1, Complaint, ¶ 26, PageID 8-9). There is no allegation in the Complaint that the officers physically touched or otherwise used force on Plaintiff while she was being escorted from the arena.

After she was escorted from the arena, Plaintiff remained in the parking lot until the end of the game. (ECF 1, Complaint, ¶ 27, PageID 9). After the game was over, Plaintiff walked back into the arena. Id. She walked past two officers who did not try to stop her. (ECF 1, Complaint, ¶ 28, PageID 9). However, Defendant Dannelly saw her in the arena and demanded that she be escorted out again and threatened that she would be arrested if she did not leave the arena and the premises entirely. Id. The two officers told her that she needed to leave, get into her car, and drive away. Id. The police watched to make sure that she drove out of the parking lot and off the premises. Id.

Plaintiff claims that she was subsequently told by NYU officials at an after-game party that she had been "set up," and that Smith College officials had provide the NCAA with her photo before the game. (ECF 1, Complaint, ¶ 29, PageID 9). Plaintiff subsequently emailed the Smith College administration about the incident and received no response. (ECF 1, Complaint, ¶ 30-33, PageID 9-10). Dissatisfied with the responses from Smith College, Plaintiff then obtained a copy of the Incident Report filled out by one of the Capital University officers. (ECF 1, Complaint, ¶ 34, PageID 10-11). The Incident Report indicated that Plaintiff came to the game intoxicated and that she was shouting insults and making obscene gestures to the other team, and that she had

walked into restricted areas and ignored directions from NCAA officials. Id. Plaintiff claims that the report was entirely inaccurate.

In the Complaint, as to Officer Grimes and the City of Bexley (among others), Plaintiff has asserted claims (1) under 42 U.S.C. § 1983 for violation of her federal constitutional rights; (2) for violation of the Ohio Constitution; (3) for negligence; (4) for wrongful arrest/false imprisonment under state law; (5) for false light invasion of privacy; (6) for defamation; and (7) for intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages.

For the reasons set forth below, Plaintiff's Complaint fails to a state a claim for relief for any of the claims asserted against Officer Grimes and the City of Bexley. Further, Officer Grimes is entitled to qualified immunity from the federal claims, and to individual immunity as to the state law tort claims under R.C. 2744.03(A)(6). Finally, the City of Bexley is entitled to political subdivision immunity from the state tort claims under R.C. 2744.02(A).

## II.    LAW AND ARGUMENT

### A.    Standard of Review.

At the motion to dismiss stage, a complaint must "state a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). Therefore, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

5

In assessing plausibility, the Court must construe factual allegations in the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

"Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Accordingly, in reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. See *Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.")

**B.      42 U.S.C. 1983: The facts alleged in the Complaint do not establish that Officer Grimes violated Plaintiff's federal constitutional rights.**

Plaintiff has filed claims for constitutional violations under U.S. Constitution pursuant to 42 U.S.C. § 1983 against both Office Grimes individually and the City of Bexley itself. Although these claims are separate and require a showing of different evidence, they have a commonality: Plaintiff must show that Officer Grimes violated her constitutional rights. The facts alleged in the Complaint, if true, do not establish that Officer Grimes violated Plaintiff's federal constitutional rights as a matter of law.

Read liberally, Plaintiff's Complaint alleges that Officer Grimes violated her First and Fourth Amendment rights by helping escort her out of the Arena when directed to do so by the tournament operator. The facts in the Complaint do not support either violation.

6

### 1. Fourth Amendment, U.S. Const.

This Court dealt with facts similar to those in this case in *Leta v. Hamilton County Dep't of Job & Family Servs.*, 668 F. Supp. 3d 724 (2023). In *Leta,* plaintiffs were parents whose children were removed and placed in foster care. Plaintiffs attended medical appointments for the children, who were brought to the appointments by their foster mother. During the appointments, a dispute arose about contact between the children and their parents, and the police were called. The staff at the medical office asked for the plaintiffs to be removed, and they were escorted from the office by the police. Plaintiff brought various claims related to the incident, including a claim for unreasonable seizure in violation of the Fourth Amendment. Affirming dismissal of the claim on the pleadings, the Court held that "[p]laintiffs have not identified any Sixth Circuit or Supreme Court case holding that officers seized an individual for purposes of the Fourth Amendment when they escort him or her from private property, without the use of force, and do not otherwise restrain the individual's freedom." *Leta*, 668 F. Supp. 3d at 742. Noting that defendant officers did not use force, threaten arrest, or otherwise restrain their freedom beyond asking plaintiffs to leave the premises, the Court found no Fourth Amendment violation. In coming to this decision, the Court relied on the decision in *Youkhanna v. City of Sterling Heights,* 934 F.3d 508 (6th Cir. 2019).

In *Youkhanna,* the defendant city held a contentious zoning hearing regarding the location of a mosque. When the audience became unruly, the Mayor cleared the public, other than press, from the council chambers, though audience members were allowed to remain in an adjacent vestibule. One of the individuals that was removed asserted a Fourth Amendment claim for wrongful seizure against the City and the Mayor. Affirming summary judgment for the defendants, the Court held that "when police officers 'order persons to leave public areas…such police conduct, without more, [is not] a seizure under the Fourth Amendment as long as the person is

7

otherwise free to go where he wishes.'" *Youkhanna,* 934 F.3d at 523, citing *Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015). According, the Court held:

> [Plaintiff] lost her privilege to remain in the public meeting because of her behavior. Her description of the force used by officers to escort her out—holding her hand or arm, tapping her—does not exceed guiding force, especially in light of her mid-exit refusal to leave the Council chambers. There was certainly no painful force, and [Plaintiff's] freedom was unrestricted once she exited the building. Because there was no seizure, [Plaintiff's] Fourth Amendment rights were not violated,

*Youkhanna*, 934 F.3d at 524.

These decisions are consistent with the decisions of other federal court addressing the same issue.

For instance, in *Summers v. Reilly,* 260 Fed. App. 725 (5th Cir. 2007), the plaintiff, the founder and CEO of a publicly traded company, was removed from his position during a board meeting. Following his removal, he was physically escorted out of the building by a part-time judge and his bailiff who were hired to provide security for the meeting. He later sued under § 1983, claiming a violation of his rights under the Fourth and Fourteenth Amendments resulting from his removal. Affirming the District Court's dismissal of the Complaint, the Fifth Circuit held that the plaintiff had no property interest in remaining on the premises of his former company after he was removed. *Summers,* 260 Fed. Appx. at 726. The Court also held that "a person who is peaceably asked to leave, and then peaceably escorted from, private property by authorized personnel has not been detained or arrested in any recognizable sense." Id.

In *Watkins v. Miller,* 782 Fed. Appx. 770 (11th Cir. 2019), police received an anonymous call that plaintiff was trespassing in the parking lot of a shopping mall and should be removed. When the police arrived, they advised plaintiff of the call and asked him to leave. When he refused, they issued him a trespass warning and stated that he would be arrested if he remained on the property. Plaintiff left to avoid being arrested. He subsequently filed a lawsuit against the police

under § 1983, alleging that he was seized because he was not permitted to remain at the mall. Affirming the dismissal of the complaint, the Eleventh District held that the plaintiff did "not have a constitutionally protected liberty interest in remaining on that private property," and the police did not violate his rights when they directed him to leave but did not physically restrain him or impede his ability to leave the premises. *Watkins,* 782 Fed. Appx. at 774.

In *McClure v. Ports*, D.C. Maryland No. MJG-17-1198, 2017 U.S. Dist. LEXIS 207354, plaintiff, who was a union president, previously had unrestricted access to non-public areas of Maryland Transit Authority ("MTA") facilities using his ID badge. After he had a verbal altercation with an MTA hearing officer, MTA restricted Plaintiff's access to non-public areas and required him to seek permission before entering MTA property. On two occasions when Plaintiff entered MTA property without permission, he was escorted off the premises by police. He brought various claims, including one for illegal seizure against the police. The court held that as a trespasser, he did not have a constitutional right to remain on MTA property without permission. *McClure* at *23.

In *Reece v. H.E.B. Grocery Store LP*, Case No. A-20-CV-1078-LY-SH, 2021 U.S. Dist. LEXIS 3379 (W.D. Texas Jan. 7, 2021), the plaintiff was asked to leave a grocery store after a confrontation with a store employee. When the plaintiff would not leave, the store manager called the police, who issued the plaintiff a trespass warning and escorted the plaintiff from the store. The plaintiff brought an action under § 1983 against the officer who escorted him out, among others. The District Court dismissed the claims against the officer, finding that "questioning [the plaintiff] and issuance of the [trespass warning] was not a seizure under the Fourth Amendment." Id. at *9.

Here, there is no question that Capital University is a private organization that owns and operates the Arena from which Plaintiff was removed. (ECF 1, Complaint, PageID 5, ¶ 11). Plaintiff acknowledges that NCAA worked together with Capital to hold the tournament at the

9

Arena owned by Capital, and that the tournament is a private event. (ECF 1, Complaint, ¶¶ 5-6, 11-12, PageID 3-4). Finally, Plaintiff alleges that the NCAA and/or Capital sought to remove her from the tournament and from the Arena. Id. As set forth above, Plaintiff had no constitutional right to remain in the Arena once the NCAA and/or Capital determined that she should not be there. The Complaint does not allege that Officer Grimes physically detained her or that he restricted her ability to leave the premise. The only "restriction" on her was the ability to remain in the Arena or re-enter it. The Complaint fails to allege facts establishing that Officer Grimes "seized" or detained Plaintiff. Thus, the Complaint fails to state a claim for a violation of Plaintiff's Fourth Amendment rights by Officer Grimes.

### 2. First Amendment, U.S. Const.

Plaintiff also alleges that her First Amendment right to free association was violated when she was removed from the Arena, preventing her from watching the Final with her family. (ECF 1, Complaint, PageID 13, ¶ 46).

The First Amendment confers no general right for uninvited members of the public to speak on private property contrary to the proprietor's wishes. *Reform Am. v. City of Detroit,* 37 F.4th 1138, 1152 (6th Cir. 2022), citing *Lloyd Corp. v. Tanner*, 407 U.S. 551, 568, 92 S. Ct. 2219, 33 L. Ed. 2d 131 (1972) ("[T]his Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only.").

In *Reform Am.*, plaintiff was a nonprofit corporation that engaged in anti-abortion protests. Plaintiff organized a protest at a Democratic presidential debate in Detroit in 2019. Plaintiff's group of protesters had difficulties finding a spot to protest. At one point, the group moved onto the private property owned by a church. The group was directed to leave the church property by

the police, who stated that the church did not want the group on its property. In the subsequent lawsuit, plaintiff claimed, among other things, that the police violated their First Amendment rights by compelling them to leave the church property. Affirming summary judgment, the Sixth Circuit held that the plaintiff had no general First Amendment right to assemble and speak on private property, and there was no evidence that the church had held its property out as a traditional public forum for speech. *Reform Am.,* 37 F.4th at 1153. As a result, the plaintiff had no basis for its claimed violation of its First Amendment right.

In this, the Complaint alleges that the event from which Plaintiff was removed was a basketball game being put on by a private organization (NCAA), being played within a building located on private property owned by a private university (Capital). (ECF 1, Complaint, PageID 3-4, ¶ 5,11). There is no allegation that the tournament or the Arena were traditional public forums. Indeed, a basketball game held by a private organization on the private property of a private university is not a traditional public forum. Per *Reform Am.*, plaintiff had no First Amendment right to speak or assemble within the Arena. Absent such a right, Plaintiff has no legal grounds for her claim against Officer Grimes or the City of Bexley for violation of her First Amendment rights.

### 3.    Due Process.

Although not entirely clear, the Complaint also appears to assert that Plaintiff's procedural due process rights were violated because Officer Grimes helped remove her from the Arena "without first conducting a reasonable check, investigation, verification or corroboration of the factual predicates for such directions and instructions [from the NCAA.]" (ECF 1, Complaint, PageID 12, ¶ 41).  That is, Plaintiff claims that Officer Grimes had a constitutional duty to conduct some sort of investigation and make some sort of determination of the accuracy of information provided to him before he helped remove her from the Arena. Id. Conversely, Plaintiff appears to

claim that she had a constitutional right to remain in the Arena until and unless the responding officers investigated the NCAA's reasons for wanting her to be removed. This assumes that Plaintiff had a right to due process before being removed from the property, which she did not.

Any due process claim must begin with the determination of whether the claimant actually had a right to that which was allegedly deprived. An individual has no right to a due process hearing unless he can show that he has been deprived of a state-created property right or a federally secured liberty interest. *Rodic v. Thistledown Racing Club, Inc,* 615 F.2d 736, 739 (6th Cir. 1979), citing *Leis v. Flynt*, 439 U.S. 438, 99 S. Ct. 698, 58 L. Ed. 2d 717 (1979). An individual, however, has no right to enter or remain on the private property of another, particularly when the owner of the property wishes for the individual to leave. *Reform Am.,* 37 F.4th at 1152. As a result, Plaintiff had no right to remain within the Arena, and the NCAA and/or Capital could have her removed for any reason. Because Plaintiff had no constitutional right to remain in the Arena, Officer Grimes did not violate this non-right by not investigating the NCAA's reasons for wanting her to be removed, or by not giving her some opportunity to dispute the NCAA's reasons for her removal. That is, Officer Grimes could not have violated Plaintiff's due process rights by helping remove her from the Arena, because she had no right to remain on the property once the NCAA and/or Capital decided that she needed to leave.

All told, Plaintiff alleges the following failings, which she claims violated her due process rights:

- Officers did not investigate, verify or corroborate information provided by the NCAA officials. (ECF 1, Complaint, PageID 14, ¶ 49).

- Officers did not tell her why she was being ejected from the Arena. Id.

- Officers did not provide her with an opportunity to explain, rebut or deny accusations made against her. Id.

Even if true, none of these allegations support a Fourth Amendment claim because Plaintiff had no right to remain on the property once the NCAA and/or Capital decided that she should be removed.

Plaintiff also alludes to the fact that Officer Grimes did not properly investigate whether her actions "might constitute misdemeanors," suggesting that she could only be removed if the officers had reason to believe that she committed some criminal act. This is also inaccurate. A private property owner controls who is permitted on its property, and can restrict access to their property for any reason. Plaintiff did not have a right to remain in the Arena, against the wishes of the NCAA and/or Capital, simply because she was not engaged in criminal acts.

Based on the above, assuming the truth of the allegations in the Complaint, Plaintiff's due process claim fails to state a claim for relief for a due process violation against Officer Grimes.

C.    **42 U.S.C. 1983, Qualified Immunity: The facts alleged in the Complaint do not establish that Officer Grimes violated Plaintiff's clearly established federal constitutional rights.**

As set forth above, Plaintiff did not have a constitutional right to remain within the Arena against wishes of the parties in control of the property who was holding the tournament, which was the NCAA. Thus, Officer Grimes' participation in the process of escorting Plaintiff out of the arena did not violate Plaintiff's constitutional rights. Even assuming the truth of the allegations in the Complaint, Plaintiff cannot establish a violation of her constitutional rights under the first prong of the analysis for qualified immunity.

Qualified immunity, however, is a two prong test. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The second prong requires Plaintiff to show not only

that her constitutional rights were violated, but that the law governing Officer Grimes' conduct in this situation was so clearly established that any reasonable officer in his position would have been aware that his conduct violated Plaintiff's constitutional rights. *Pearson,* 555 U.S. at 232. This requires that existing precedent at the time of the underlying conduct at issue "must have placed the statutory or constitutional question beyond debate." *White v. Pauly,* 580 U.S. 73, 79, 137 S. Ct. 548, 196 L. Ed. 463 (2017). Based on the facts alleged in the Complaint, Plaintiff cannot make this showing.

In *Leta v. Hamilton County Dep't of Job & Family Servs.*, 668 F. Supp. 3d 724 (2023), the Sixth Circuit expressly stated that there was no controlling case law holding that a police officer violated an individual's constitutional rights by removing the individual at the request of the property owner. *Leta,* 724 F. Supp. 3d at 742. This decision was issued on April 5, 2023, just a year before the underlying events in this case. Defendants have located no case law from the Supreme Court, from the Sixth Circuit or from a court in any district within this circuit that contradicts or modifies the holding in *Leta.* In particular, Defendants have not located any applicable case law between the decision in *Leta* and May 16, 2024 that changed the law applicable to this case. As such, even if this Court were to find that the Complaint states a viable claim for a constitutional violation, the state of law in this Circuit on March 16, 2024 was not sufficiently clearly established such that a reasonable officer in Officer Grimes' position would have known beyond debate that his conduct was prohibited. In fact, the most recent case from the Sixth Circuit holds the contrary.

For these reasons, assuming the truth of the allegations in the Complaint, Officer Grimes is entitled to qualified immunity from Plaintiff's § 1983 claim as a matter of law.

**D.     42 U.S.C. 1983, *Monell*: The facts alleged in the Complaint do not establish that the moving force behind the alleged constitutional violation was a policy, practice or custom of the City of Bexley.**

Plaintiff has also alleged a claim against the City of Bexley, Officer Grimes' employer. City liability only attaches under *Monell* in those situations in which a plaintiff establishes that a custom, policy, or practice attributable to the city was the "moving force" behind the violation of the plaintiff's constitutional rights. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). To properly plead a *Monell* claim, the Plaintiff must allege facts which, if true, would establish (1) a constitutional violation; and (2) that the proximate cause of the violation was a policy, practice or custom on the City.

As a threshold matter, the Monell claim fails for the same reason as the individual claim against Officer Grimes. Plaintiff's Complaint does not allege facts sufficient to show that Officer Grimes did violate Plaintiff's constitutional rights, as set forth above. As a result, the Complaint likewise does not contain sufficient facts to support the first prong of a *Monell* claim.

In addition, the Complaint does not state facts which, if true, would support a finding of a custom, policy or practice that was the moving force behind the alleged constitutional violation.

For a complaint to survive a motion to dismiss, it must contain "either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (citation and internal quotation marks omitted). The Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2006) (citation and quotation marks omitted). "[A] plaintiff's obligation to provide the 'grounds' of his

15

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 246-47 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).

In this case, Plaintiff's *Monell* allegations are formulaic and merely recite the elements of the claim. Plaintiff alleges that the City of Bexley failed to adequately train and supervise Officer Grimes (ECF 1, Complaint, PageID 15, ¶ 51-53), but Plaintiff fails to allege any facts specifying how or in what way the training was inadequate. District Courts in the Sixth Circuit hold that failure to allege specifics regarding *Monell* liability necessitates dismissal. *Jones v. Oakland Cty. Gov't*, Case No. 17-10139, 2018 U.S. Dist. LEXIS 41034 at *11-12 (E.D. Mich. Feb. 16, 2018) ("[A] complaint must contain more than bare statements that the alleged constitutional violation was caused by a policy or custom to survive a motion to dismiss. Plaintiffs are in fact required to identify the practice or policy that forms the basis of their claim.") citing *Vidal v. Lexington Fayette Urban Cty. Gov't*, 2014 U.S. Dist. LEXIS 124718, 2014 WL 4418113, at *3 (E.D. Ky. Sept. 8, 2014) (quoting *Ghaster v. City of Rocky River*, 2010 U.S. Dist. LEXIS 71020, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010); *Premoh v. City of Cincinnati*, Case No. 1:15-cv-265, 2016 U.S. Dist. LEXIS 63628 at *24-25 (S.D. Ohio May 13, 2016) (Non-specific allegations of failure to train and an alleged policy of approving unconstitutional conduct by employees did not state plausible *Monell* claim).

Because Plaintiff has not pled a plausible *Monell* claim, the federal claims against the City of Bexley must be dismissed.

**E.    Ohio Constitution: There is no private cause of action for the violation of the Ohio Constitution.**

Plaintiff's Second Cause of Action purports to assert a cause of action for violations of the Ohio Constitution. Ohio courts, however, have consistently held that there is no private cause of action for violations of the Ohio Constitution. See *Harris v. City of Columbus,* 2016-Ohio-1036, ¶ 24 (10th Dist.), citing *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities*, 1992-Ohio-35 (finding no private cause of action for torts allegedly arising under the Ohio Constitution); *PDU, Inc. v. City of Cleveland,* 2003-Ohio-3671, ¶ 18 (8th Dist.). That is, there is no state law equivalent of § 1983 under Ohio law, and the provisions of the Ohio Constitution on which Plaintiff relies are not self-executing. Therefore, Plaintiff's purported claim for violation of the Ohio Constitution does not exist and must be dismissed.

**F.    The City of Bexley is entitled to political subdivision immunity under R.C. 2744.02(A) for all state law claims asserted by Plaintiff.**

Plaintiff has asserted a variety of state law tort claims against the City of Bexley based on the conduct of Officer Grimes. Plaintiff alleges that Officer Grimes was acting within the scope of his employment as a City police officer on March 16, 2024 during the underlying events at issue in this case. (ECF 1, Complaint, ¶ 13, PageID 6-7). As a result, the City of Bexley is entitled to political subdivision immunity under R.C. 2744.02(A) from these claims.

The City of Bexley is a political subdivision under R.C.§ 2744.01(F). As a result, it is presumptively entitled to immunity from liability for Officer Grimes' actions under R.C. 2744.02(A). This immunity can only be removed if one of five limited exceptions to immunity listed in R.C. 2744.02(B) apply to the circumstances of this case. Notably, this immunity applies even where the plaintiff alleges that the actions of an employee of the political subdivision were

reckless or intentional. *Wilson v. Stark County*, 70 Ohio St. 3d 450, 452 (1994); *Fabian v. Steubenville*, 2001-Ohio-3522, * 2 (7th Dist.).

The provision of police services is expressly identified as a "governmental function" under R.C. § 2744.01(C)(2)(a). With respect to the exception to immunity under R.C. 2744.02(B)(2), courts have consistently held "a police officer who is working special duty is still performing a government function." *Morrison v. Horseshoe Casino,* 2020-Ohio-4131, ¶ 76 (8th Dist.), citing *Cannavino v. Rock Ohio Caesars Cleveland, L.L.C.*, 2017-Ohio-380, ¶ 24 (8th Dist.); see also *Cooper v. Tommy's Pizza*, 2010-Ohio-2978, ¶ 8 (10th Dist.) (recognizing that a police officer working special duty was performing "a governmental function" and working in a governmental or official capacity). Therefore, R.C. 2744.02(B)(2) does not apply here. Likewise, the remaining exceptions to immunity are inapplicable on their face. As a result, even assuming that the facts pled in the Complaint are true, the City of Bexley is immune from all of Plaintiff's state tort law claims as a matter of law.

> **G.  Officer Grimes is entitled to individual immunity under R.C. 2744.03(A)(6) for all state law claims asserted by Plaintiff.**

Under R.C. § 2744.03(A)(6), an employee of a political subdivision is entitled to immunity for individual liability for actions taken within the scope of their employment unless those actions were: 1) malicious; 2) in bad faith; or 3) wanton or reckless.

Officer Grimes was an employee of the City of Bexley and was acting within the scope of his employment during the events on which the Complaint is based. (ECF 1, Complaint, ¶ 13, PageID 6-7). Thus, he is entitled to individual immunity unless he acted maliciously, in bad faith, or wantonly or recklessly.

The standard for showing that a political subdivision employee acted with malicious purpose, in bad faith, or in willful, wanton, or reckless manner is "rigorous" and "will in most

circumstances be difficult to establish." *Hoffman v. Gallia Cty. Sheriff's Office*, 2017-Ohio-9192, ¶ 39, citing Argabrite v. Neer, 2016-Ohio-8374, at ¶8). Consequently, summary judgment usually is appropriate if the employee's conduct does not, as a matter of law, rise to the level of maliciousness, bad faith, willfulness, wantonness, or recklessness. Id., citing *Scott v. Kashmiry*, 2015-Ohio-3902, ¶ 20 (10th Dist.) (where "reasonable minds could only conclude that [an officer's] conduct was, at worst, negligent," then "the issue of immunity is an appropriate issue for resolution on summary judgment"). Accordingly, a court ordinarily may enter summary judgment in favor of a political subdivision and its employee if the employee's actions "showed that [the employee] did not intend to cause harm,***did not breach a known duty through an ulterior motive or ill will, did not have a dishonest purpose, and did not create an unnecessary risk of physical harm greater than that necessary to establish negligence." *Hackathorn v. Preisse*, 104 Ohio App.3d 768, 772, 663 N.E.2d 384 (9th Dist.1995).

"Recklessness," which is arguably the lowest standard among those listed under R.C. 2744.03(A)(6), is "a perverse disregard of a known risk." *O'Toole v. Denihan*, 2008-Ohio-2574, ¶ 73. Recklessness, therefore, necessarily requires something more than mere negligence." Id. at ¶ 74. The actor must be conscious that his conduct will in all probability result in injury. Id.

In the Complaint, the only allegation about Officer Grimes is that he was one of four officers that helped escort Plaintiff from the Arena at the direction of the NCAA and/or Capital University, and that Officer Grimes did not question the NCAA and/or Capital's reasons for wanting Plaintiff to be removed. (ECF 1, Complaint, ECF 8, ¶ 24). These bare allegations, even if true, could not support a finding that Officer Grimes acted with malice, in bad faith, or wantonly or recklessly. This is particularly true in light of the fact that Plaintiff has no legal right to remain on private property once the property owner/operator decided that it did not want her to be on its

19

property or at its event. Likewise, there is no law that would have directed Officer Grimes to second-guess the reasons why the NCAA and/or Capital wanted Plaintiff removed from the Arena, or to investigate whether those reasons were valid. Because the specific facts pled about Officer Grimes in the Complaint do not support the exceptions to individual immunity, Officer Grimes is entitled to immunity under R.C. 2744.03(A)(6) as to Plaintiff's state tort law claims as a matter of law.

**H.      Plaintiff's claims for false arrest and/false imprisonment against Officer Grimes fail because Plaintiff was not arrested or detained.**

Plaintiff has asserted claims for false arrest and false imprisonment against Officer Grimes and the City of Bexley under state law. (ECF 1, Complaint, PageID 18-19, ¶ 69-75).

Claims for false arrest and false imprisonment require proof of the same essential elements. A false arrest and false imprisonment claim is made by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. *Barnes v. Meijer Dep't. Store,* 2004-Ohio-1716, ¶ 15 (12th Dist.). To establish a claim for false imprisonment, one must prove by a preponderance of the evidence that he was intentionally detained or confined without lawful privilege and against his consent. Id.

As set forth above, Plaintiff was not seized or otherwise detained by Officer Grimes. The only allegation in the Complaint on this issue as to Officer Grimes is that he was one of four officers who helped escort Plaintiff out of the Arena. There is no allegation that Officer Grimes took any further actions with respect to the Plaintiff after she exited the Arena the first time. As held in the myriad of cases above, an individual is not seized when they are escorted from private property, without the use of force, and without otherwise restraining the individual's freedom. *Lee,* 668 F. Supp. 3d at 742. Because there are no facts in the Complaint that would establish that Officer

Grimes detained Plaintiff, Plaintiff's claims for wrongful arrest/wrongful imprisonment against Officer Grimes and the City of Bexley fail on the pleadings.

**I.      Plaintiff's claim for false light invasion of privacy fails because Officer Grimes did not publicize private facts about the Plaintiff.**

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *Welling v. Weinfield,* 2007-Ohio-2451, ¶ 61.

In this case, there are multiple problems with Plaintiff's false light invasion of privacy claims.

First, there is no allegation that Officer Grimes publicized anything to anyone about the Plaintiff. The only allegation is that he assisted in escorting her out of the Arena. It is too far a stretch of this tort to say that these facts constitute "publication" of any fact about Plaintiff.

Second, reading the Complaint liberally, it appears that Plaintiff is claiming that the removal of Plaintiff communicated to everyone else in the Arena that Plaintiff had engaged in some form of misconduct, which caused her to be removed. In reality, to the extent that the Plaintiff's removal communicated anything, it was that Plaintiff did or said something to which the NCAA and/or Capital objected, and that Officer Grimes was following their instructions to remove her. *That* information is entirely true, as the NCAA and/or Capital *did* ask for Plaintiff to be removed. (ECF 1, Complaint, PageID 10, ¶ 34, 40-41). The facts set forth in the Complaint, if true, do not establish that Officer Grimes gave publicity to any false facts about the Plaintiff on March 16, 2024, such that Plaintiff can maintain a false light invasion of privacy claims against Officer Grimes or the City of Bexley.

**J.      Plaintiff's claim for defamation fails because Officer Grimes did not publicize any false statements about Plaintiff.**

"Defamation is a false publication that injures a person's reputation, exposes him to public hatred, contempt, ridicule, shame or disgrace; or affects him adversely in his trade or business." *Kanjuka v. Metrohealth Med. Ctr.*, 2002-Ohio-6803, ¶ 15 (8th Dist.). "The essential elements of a defamation action are a false statement, that the false statement was defamatory, that the false defamatory statement was published, the plaintiff was injured and the defendant acted with the required degree of fault." Id. "There are two forms of defamation: libel or slander. Generally, slander refers to spoken defamatory words and libel refers to written defamatory words." Id.

There is no allegation in the Complaint that Officer Grimes made any statement—written or spoken—about the Plaintiff. Instead, Plaintiff alleges that Officer Grimes helped escort her out of the Arena at the direction of the NCAA. (ECF 1, Complaint, ¶ 26, PageID 8-9). Plaintiff claims that escorting her out of the Arena was the "functional equivalent of statements that [Plaintiff] had committed a crime or other wrongful act that deserved to be punished and justified expulsion from the game and from the premises." (ECF 1, Complaint, ¶ 85, PageID 21). There is, however, no authority for this "functional equivalent" argument. Absent an allegation that Officer Grimes made some statement about Plaintiff, she cannot maintain her defamation action here.

A very similar argument was asserted unsuccessfully in *McKee v. McCann,* 2017-Ohio-7181 (8th Dist.). In *McKee*, plaintiff was stopped by security guards at a Walmart when he refused to produce a receipt when he left the store. The guards called the local police, who placed plaintiff under arrest when he refused to identify himself. Plaintiff eventually relented, identified himself, showed the police his ID, as well as the receipts for the items he bought. The police then released him without a charge. Plaintiff subsequently brought a lawsuit alleging a variety of claims,

22

including defamation. In affirming the dismissal of the plaintiff's defamation, the court found that the defamation claim did not involve any statement by the police, and was premised only the arrest itself because it was "false" and it occurred in the public. The court determined that the defamation claim in this context was only "an attempt to alternatively plead a nonviable false arrest claim." Id. at ¶ 28.

As in *McKee,* Plaintiff is attempting to alternatively plead a claim for false arrest by recasting the "arrest" as a statement for the purposes of defamation. As in *McKee*, the defamation claim should be treated the same as the false arrest claim, and be dismissed.

Finally, as stated in relation to the false light invasion of privacy claim, the Complaint does not allege that Officer Grimes communicated any false information to anyone. By escorting Plaintiff out of the Arena, the only message communicated to the public was that the NCAA wanted Plaintiff removed from the tournament. Plaintiff is merely speculating that any third parties would have concluded that she committed a crime or engaged in misconduct, particularly as there is no allegation that she was physically restrained or handcuffed, or even touched, when she was escorted out of the Arena. And there is no allegation that Officer Grimes communicated anything about Plaintiff committing a crime or engaging in misconduct to anyone.

**K.  Plaintiff's Complaint fails to allege any facts supporting a claim of Intentional Infliction of Emotional Distress against Officer Grimes.**

To establish a claim of intentional infliction of emotional distress, Plaintiff must allege facts sufficient to show: (1) that Officer Grimes either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to plaintiff; (2) that Officer Grimes' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that Officer Grimes' actions were the proximate cause of plaintiff's psychic injury; and (4) that

the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it. *Burkes v. Stidham*, 107 Ohio App.3d 363, 375, 668 N.E.2d 982 (1995). Serious emotional distress requires an emotional injury that is both severe and debilitating. Id.

To recover for intentional infliction of emotional distress ("IIED") in Ohio, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. *Ekstrom v. Cuyahoga County Cmty. College*, 150 Ohio App. 3d 169, 182 (8th Dist. 2002). Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 374-375, 6 Ohio B. 421, 453 N.E.2d 666 (1983).

In this case, the sole allegations in the Complaint as to Officer Grimes is that he assisted in peacefully escorting Plaintiff out of the Arena at the request of the NCAA and/or Capital. As set forth above, Plaintiff has no right to remain in the Arena without the permission of NCAA and/or Capital. There is no allegation that Officer Grimes used any force when he helped escort Plaintiff out of the Arena. These facts, if true, do not come close to showing that Officer Grimes acted in a way that was extreme and outrageous. In addition, as to this claim, Plaintiff's Complaint fails to allege *any* facts and simply reiterates the legal elements of an IIED claim. This is not sufficient to state a claim under *Iqbal* and *Twombly*.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint fails to state a claim for relief as against Defendants Jeremy Grimes and the City of Bexley, and these Defendants are entitled to immunity

from the claims asserted.  As a result, Defendants respectfully request that this Court grant judgment on the pleadings and dismiss the claims against them with prejudice.

Respectfully submitted,

/s/ *Aaron M. Glasgow*
Aaron M. Glasgow (0075466)
Isaac, Wiles, Burkholder & Miller, LLC
2 Miranova Place, Suite 700
Columbus, Ohio 43215
T: (614) 220-5170 / F: (614) 365-9516
aglasgow@isaacwiles.com
*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Aaron M. Glasgow*
Aaron M. Glasgow (0075466)